## F. W. WOOLWORTH CO. v. CONTEMPORARY ARTS, Inc.

### No. 4584.

United States Court of Appeals
First Circuit.

Dec. 26, 1951.

rauer & Smerdon, Boston, Mass., and Davies, Hardy, Schenck & Soons, New York City, on brief), for appellant.

Cedric W. Porter, Boston, Mass., (Harry F. R. Dolan and Heard, Smith, Porter & Chittick, all of Boston, Mass., on brief), for appellee.

WOODBURY, Circuit Judge.

This is an appeal from a judgment for the plaintiff in a suit for infringement of copyright.

In 1942 Elizabeth Philbrick, now Mrs. Glenn C. Hall, using the professional name of "Jan Allen," applied for and received a certificate of copyright registration for a sculptured work of art entitled "Cocker-spaniel in show position." The certificate gives the date of publication as March 26, 1942; the date when copies were received as March 28, 1942, and the Entry as Class G pub. No. 39960. In June 1943 "Jan Allen" assigned all her right, title and interest in the copyright to the plaintiff-appellee, Contemporary Arts, Inc., a Massachusetts corporation engaged in the business of manufacturing and selling small sculptured figurines of various kinds and also statuettes of many different breeds of dogs which are said to be highly authentic even to the minutest detail. Among the items in the second category it manufactured and sold, from 1942 (when it had commissioned "Jan Allen" to do her work) until the date of the alleged infringement complained of herein, three models said to embody the copyrighted work, all reproductions of which bore notice of copyright in the statutory form. One of the embodiments relied upon is a buff colored plaster model about nine inches long by seven inches high which sold at retail for $4.00; another is a slightly smaller (about eight by six inch) red porcelain model which sold at retail for $9.00, and the third is a hand painted black and white porcelain model which retailed for $15.00.[1]

The infringement charged was the sale at retail for $1.19 by F. W. Woolworth Co., a Pennsylvania corporation operating a na-

163

Kenneth W. Greenawalt, New York City, (Clarence A. Barnes, Boston, Mass., Martin A. Schenck, New York City, Barnes, Mak-

---

[1]. Contemporary Arts, Inc., apparently also manufactured and sold a black porcelain model.

tion-wide chain of stores, of ceramic models of a cocker spaniel said to be essentially the same as the copyrighted work. It appears and is not disputed that the Woolworth Co. bought 127 dozen of the accused statuettes from the Sabin Manufacturing Company, a partnership of McKeesport, Pennsylvania, in March, April and May, 1949, for $.60 apiece, and that Sabin in turn had purchased the statuettes from the manufacturer, Lepere Pottery Co., another partnership, of Zanesville, Ohio. At the outset of the trial counsel for the defendant informed the court that Sabin was openly assisting the defense since he had the real financial interest therein because of an indemnification agreement with the Woolforth Co., and that the latter, although recognizing its primary liability, if there was any, was "here simply to watch the proceedings."

The principal issue at the trial, which was hotly contested, was that of infringement. And this issue the court below resolved against the defendant. After detailed consideration it reached the ultimate conclusion that "the plaintiff's copyright has been infringed by the defendant's sale of ceramic models copied from the plaintiff's sculpture." Then, regarding an injunction as unnecessary under the circumstances, the court awarded the plaintiff $5,000 statutory damages in lieu of actual damages and profits, a $2,000 attorney's fee, and costs.

■ The appellant's first contention is that Contemporary Arts has wholly failed to establish any basis for a claim of copyright infringement by failing to show which, if indeed any one, of the three models it manufactured and sold was a copy of the model upon which the copyright certificate was issued. The argument is that since the three models differ from one another, only one at the most could possibly be the copyrighted dog, and the plaintiff has failed to prove which one this was. We regard this contention as without merit for the reason that it rests upon a misconception of the nature of the protection afforded a work of art by copyright.

■ It is the well established rule that a copyright on a work of art does not protect a subject, but only the treatment of a subject. Stephens v. Howells Sales Co., Inc., D.C.1926, 16 F.2d 805, 808. The proposition was elaborated by Mr. Justice Holmes in Bleistein v. Donaldson Lithographing Co., 1903, 188 U.S. 239, 249, 250, 23 S.Ct. 298, 299, 47 L.Ed. 460, wherein with respect to cromolithographs of a circus scene prepared for advertising purposes he said: "But even if they had been drawn from the life, that fact would not deprive them of protection. The opposite proposition would mean that a portrait by Velasquez or Whistler was common property because others might try their hand on the same face. Others are* free to copy the original. They are not free to copy the copy. Blunt v. Patten, [3 Fed.Cas.No. 1,580] 2 Paine 397, 400. See Kelly v. Morris, L.R. 1 Eq. 697; Morris v. Wright, L.R. 5 Ch. 279. The copy is the personal reaction of an individual upon nature. Personality always contains something unique. It expresses its singularity even in handwriting, and a very modest grade of art has in it something irreducible, which is one man's alone. That something he may copyright * * *." Here the "something irreducible" which was "Jan Allen's" alone was certainly not a matter of subject, nor was it a matter of size or material, nor even of color, for it is well known that cocker spaniels are typically of several colors. Her "something irreducible" was shape. This does not mean stance, for show position in a dog is a standardized, stylized position which anyone is free to reproduce. It means the proportion, form, contour, configuration, and conformation, perhaps the latter in details too subtle for appreciation by anyone but a fancier, of the dog represented by the sculptured work of art. And in these respects the plaintiff's three models are exactly alike except for the elimination in the two higher priced models of undercuts, so called, which was required by the mechanical technique of casting in porcelain and other ceramic clays from a plaster master model.

It appears from the undisputed testimony and the findings of the court in accordance

therewith that the first step in the manufacture of statuettes such as those with which we are here concerned is to fashion a soft plasticene model, and the second is to make a plaster mold from that soft model. In removing the mold the original model is necessarily destroyed. The cavity of the plaster mold is then filled with a durable plaster, and after this hardens the plaster mold is chipped away, and in its turn destroyed, so that the hard plaster model becomes the master copy from which rubber production molds are made. These rubber molds are used in the production of the plaster copies, but they cannot be used to produce ceramic copies. The reason for this is that ceramic copies must be cast from plaster molds, and this requires some modification of the master copy because plaster molds, unlike flexible rubber molds, cannot be pulled away from undercuts. To meet the demands of production in ceramic, therefore, undercuts in the master copy are filled in and eliminated, but in doing so every effort is made to retain the original conception of the artist insofar as possible. Both plaster and porcelain copies are dried and sprayed with paint after the casting process, and the porcelain copies are given a glaze finish which is baked on at a high temperature with the result that more shrinkage occurs in them than in the plaster models. The quality of the ceramic used also seems to bear some relation to the degree of shrinkage.

It is evident from the foregoing that the elimination of undercuts from the plaintiff's two porcelain models, and also their smaller size, are merely factors of the mechanical process of reproduction in ceramics which have no appreciable significance upon the artistic conception of the work. We therefore regard the differences between the plaintiff's plaster and its ceramic reproductions in size, and in the elimination in the latter of undercuts, as inconsequential so far as the coverage of the copyright is concerned.

Thus when counsel for the plaintiff early in the trial offered samples of the three above mentioned Contemporary Arts models of cocker spaniels in show position, as, he said, "embodying the copyrights in suit," and the samples were marked as exhibits without any objection, all concerned in the trial were entirely correct in regarding, as they did from then on, the differences between the samples as without bearing on proof of copyright. Furthermore the statement made by counsel in offering the samples as exhibits, which was corroborated later by testimony, to the effect that the samples embodied the copyrighted dog is enough to establish the plaintiff's *prima facie* case for there is no evidence whatever, and we certainly are not going to assume without proof, that the plaintiff fraudulently substituted for its copyrighted dog other spurious ones, and fraudulently placed notices of copyright thereon. Gerlach-Barklow Co. v. Morris & Bendien, Inc., 2 Cir., 1927, 23 F.2d 159, 162.

From the foregoing discussion it is also clearly evident that from our allowing the plaintiff's three models of cocker spaniels in show position, diverse as to color, size and materials, and in inconsequentially minor ways as to shape, to stand as embodiments of the plaintiff's copyright, we are not in effect holding that the plaintiff "has a monopoly in the subject of a cocker-spaniel in show position in a sculpture or statuette," as the defendant contends. We conclude, therefore that the plaintiff has adequately established its copyright.

The findings of the court below on the issue of infringement are fully supported by the evidence. There is ample evidence in the record that the plaintiff's dog and the Woolworth one embody the identical intellectual or artistic conception of a dog of the breed involved in show attitude. Moreover, this evidence is strongly supported by visual comparison. It is true that a dog with short hair on the head, neck and upper two thirds of the body is represented in the plaintiff's statuettes, whereas the dog in the Woolworth model is represented as having long hair on the body and neck. This difference, however, is unimportant, for on ample evidence the court below found that the representation of long hair on the Woolworth model could readily have been accomplished, and was in fact accomplished, by etching in wavy

lines on a plaster master model made from one of the plaintiff's plaster statuettes. What is highly, if not conclusively, significant of copying is the fact that the plaintiff's and the defendant's statuettes are idenical in proportion, and so far as we can see with inexpert eyes in conformation,[2] and furthermore the configuration of the curls and folds of the long hair represented on the under body and the feathering represented on the legs of the plaintiff's statuette are shown as asymmetrical, and the defendant's statuette shows the identical lack of symmetry in these respects. Thus there is ample evidence that one model was copied from the other. There also being ample evidence that "Jan Allen" did the original work, in that drawing upon her own intimate knowledge of dogs and after research and consultation with experts, she fashioned a plasticene model of the dog she had in mind from which the plaster master model of the Contemporary Arts dogs was made, it follows that the ultimate finding by the court below of infringement by the defendant by copying the plaintiff's statuette cannot be successfully assailed.

Other matters, however, remain for consideration and the first of these is whether the court below erred in excluding certain testimony offered by the defendant-appellant in surrebuttal. To understand this question it is necessary to state the defendant's case in some detail.

The defendant's primary defense was that the ceramic statuette of a dog which it had sold was not copied, directly or indirectly, from the plaintiff's copyrighted work of art, but was reproduced from a statuette independently sculptured by a craftsman named Moyer, using his own pet spaniel of English type as the model, in 1938 when he was working for a pottery company in Zanesville, Ohio, which later burned and went out of business. In support of this defense Moyer took the stand and testified to his making a model of a cocker spaniel under the circumstances out-lined above, and then produced a grey plaster statuette which he identified as his, or a replica of his, which he said he found in 1945 or 1950, (his testimony as to the date was vague) with a set of dies and molds from which to make it, in the storeroom of the Lepere Company, for which he went to work after the pottery company for which he worked when he made the model closed its doors. He did not know definitely how, or under what circumstances, the statuette, molds and dies came into Lepere's possession, but he said the Woolworth dog was made from this model, as seems evident from inspection. Etched on the bottom of the model appears the legend "AMCO 1938" the presence of which, however, neither Moyer nor any other witness was able to explain.

To refute Moyer's testimony, which the court below found vague and "difficult to believe" and said it could not "give credence to," the plaintiff in rebuttal called its general manager back to the stand who said that he could not tell the age of Moyer's model by inspection of the plaster of which it was made, but that the wavy lines on it to represent long body hair and the legend "AMCO 1938" could readily at any time have been scratched on a wet plaster model made from the plaintiff's plaster statuette, and that the appearance of age exhibited by Moyer's model could have been achieved by washing it when it was dusty and dirty, which Moyer said he had done when he found his model in order to clean it. Then, to rebut this testimony, the defendant in rejoinder offered an expert witness to testify that he could tell the age of plaster by inspection, and that Moyer's model was as old, or approximately as old, as the date which it bore. The court rejected this proffered testimony on the ground that it should have been offered as part of the defendant's case in chief and came too late in surrebuttal.

The permissible range of testimony offered in rejoinder, or surrebuttal,

2. The plaintiff's expert witness and the defendant's expert disagree on this, but visual inspection leads us to agree with the court below that the plaintiff's expert was correct. At any rate, we cannot say that the court below was "clearly erroneous" in accepting the testimony of the plaintiff's expert on this point.

as it is sometimes called, is to a large extent discretionary with the trial court. Ordinarily at that late stage in a trial only evidence to explain away new facts brought forward by the proponent in rebuttal, or evidence to impeach witnesses who testified in rebuttal, is properly admissible. Otherwise orderly presentation, and hence clarity, would bow to the convenience, or even whim, of counsel, and afterthoughts, with consequent confusion, would be encouraged at the expense of thorough preparation by counsel in advance of trial.

The surrebuttal testimony offered by the defendant and refused admission by the court does not fall squarely into either one of the two classes of evidence ordinarily admissible in rejoinder enumerated above. The age of Moyer's model was in issue from the beginning for it was offered as the master copy from which the Woolworth dog was made, which indeed it appears to be, and as antedating the copyrighted work of "Jan Allen." Thus the defendant should have anticipated that the plaintiff would offer evidence in rebuttal to show that Moyer's model was not as old as the date on it would seem to indicate by putting on a witness to testify that the date, like the wavy hair lines, could readily at any time after casting have been inscribed on a moistened plaster copy of the plaintiff's plaster model.

■ If the defendant had wished to buttress Moyer's testimony as to the age of his plaster model by the testimony of its expert, it could certainly have done so as part of its defense in chief. Having chosen instead to wait until surrebuttal to offer its evidence, it gambled on a favorable discretionary ruling by the court, and having lost, it can hardly be heard to complain. Nor does the testimony offered by the defendant in surrebuttal tend to impeach the plaintiff's rebuttal witness for the latter did not say that no one could tell the age of

plaster by inspection but only that he was unable to do so.

■ The next matter for consideration is the appellant's contention that the court below erred in awarding the plaintiff-appellee statutory damages in the amount of $5,000 and a $2,000 attorney's fee. We dispose of the matter of the attorney's fee with the bare comment that the court below in making its award committed no error of discretion that we can see. The substance of the appellant's argument on statutory damages can be briefly stated. It says that by affirmatively establishing without objection by the plaintiff a gross profit of $.59 per dog, (it ignored possible deductions for dogs not sold, selling costs, etc. which it did not bother to show) it absolutely precluded any assessment of statutory damages under the "in lieu" clause of § 25(b) of the Copyright Act of 1909, 35 Stat. 1081, as amended by the Act of 1912, 37 Stat. 489 and enacted into law by the Act of 1947, 61 Stat. 661, 17 U.S.C. § 101(b), quoted in material part in the margin,[3] leaving as the only alternative an award of profits computed by multiplying the gross profit on each dog by the number of dogs involved, or $899.16.

■ The argument is fundamentally fallacious for the reason that it rests upon the not uncommon confusion of profits with damages, both of which are recoverable in copyright cases, but which are nevertheless distinct items of recovery and are awarded on quite different principles. Damages are awarded to a copyright proprietor on the conventional legal principle of affording compensation in money for the harm inflicted upon him by the wrongful act of the infringer, whereas an infringer's profits from his wrongful act are awarded to the copyright proprietor, not to inflict punishment on the infringer, but as appropriate equitable relief incident to a decree of injunction in order to prevent the infringer's

3. "If any person shall infringe the copyright * * * such person shall be liable: * * *. To pay to the copyright proprietor such damages as the copyright proprietor may have suffered due to the infringement, as well as all the profits which the infringer shall have made from such infringement * * * or in lieu of actual damages and profits, such damages as to the court shall appear to be just [within a minimum limit of $250 and a maximum limit of $5,000], and shall not be regarded as a penalty."

unjust enrichment. Sheldon v. Metro-Goldwyn Pictures Corp., 1940, 309 U.S. 390, 399, 60 S.Ct. 681, 84 L.Ed. 825; Sammons v. Colonial Press, 1 Cir., 1942, 126 F.2d 341, 344, 345 and cases cited.

It is true that there is language in the cases relied upon by the appellant,[4] which taken out of context, seems to lend support to its argument that proof of actual profits precludes the assessment of statutory damages under the "in lieu" clause. The language of this court in Sammons v. Colonial Press, 1 Cir., 126 F.2d 341, 350 is typical, wherein, with citation of cases, this court said: "No evidence of actual damages having been given, if Colonial Press made no profits for which it is accountable the assessment by the district court under § 25(b) of statutory damages against Colonial in the minimum amount of $250 cannot be reviewed upon appeal. * * However, if the district court finds after further hearing upon remand that Colonial Press made profits for which it must account, the amount of such profits will be the measure of recovery, and it will no longer be permissible to decree statutory damages 'in lieu of actual damages and profits.'"

It is of primary significance to note, however, that in the Sammons case, as well as in the cases cited therein and in those upon which the appellant relies, it is made clearly to appear that there was no issue of the plaintiff's damages, the only recovery sought, or the only recovery available on the evidence, being the infringer's profits. Since there was no question of damages in those cases, the language used therein is entirely accurate, for when no damages are recoverable to permit a recovery under the "in lieu" clause of profits in excess of the amount of the actual profits clearly established by the evidence would be to use the "in lieu" clause for the imposition of a penalty which the statute categorically forbids.[5] In the case at bar, however, the plaintiff in its complaint specifically demanded, in addition to an injunction, attorney's fees and costs, both damages and profits in such amount "as to the court shall appear proper within the provisions of the copyright statutes, but not less than two hundred and fifty dollars." That is to say, it asked for an assessment of both damages and profits by the court under the "in lieu" clause of § 25(b) of the Copyright Act of 1909, supra. It maintained this position throughout the trial, insisting that it had suffered damage and that the defendant had made profits, although it made no effort to prove the actual dollars and cents amount of either, and the court below on adequate evidence categorically found both that the plaintiff had suffered damage from the infringement and also that the defendant had made a profit therefrom, but that it was difficult if not impossible for the plaintiff to prove the actual amount of either its damage or of the defendant's profits with the certainty required by law. Thus the case at bar differs radically from those upon which the appellant relies in that here we have a live issue of damages. In this situation it would be illogical to take the language of the cases cited out of context, and use it to support the proposition that proof of actual profits precludes any assessment of damages under the "in lieu" clause whenever an actual profit in some amount has been shown, for recovery under the clause is for both "dam-

4. Principally Davilla v. Brunswick-Balke Collender Co., 2 Cir., 1939, 94 F.2d 567; Sammons v. Colonial Press, 1 Cir., 1943, 126 F.2d 341; Washingtonian Pub. Co. v. Pearson, 1944, 78 U.S.App.D.C. 287, 140 F.2d 465; Malsed v. Marshall Field & Co., D.C.Wash.1951, 96 F.Supp. 372.

5. Furthermore, in the Sammons case, supra, the plaintiff took an appeal on the ground that it was error to give judgment merely for the minimum statutory damages of $250 when, as plaintiff contended, the evidence showed that the infringer had made actual profits considerably in excess of that sum. This raised an accounting problem as to the allocation of overhead, and we sent the case back to the district court for further determination as to the amount of profit, if any, made by the infringer. Of course, if it should be established with legal certainty that the amount of the infringer's profits, properly computed, exceeded the sum of $250, plaintiff was entitled to judgment for the larger sum, as we instructed the district court in our opinion.

ages and profits" and those are separate and distinct items of recovery. Moreover to hold that a defendant by proving its profits, which might have been small or even non-existent, could prevent a plaintiff from recovering any damages whatever under the "in lieu" clause, even though he might show that his damage was heavy although incalculable with legal certainty, would serve to defeat the purpose of the clause which is to permit recovery of more than a merely nominal sum when, as is not uncommon in these cases, it is difficult or impossible for a plaintiff to prove the actual amount of either damages or profits with the certainty required by law. Douglas v. Cunningham, 1935, 294 U.S. 207, 55 S.Ct. 365, 79 L.Ed. 862.

 It is true that the defendant by showing its gross profits, which the plaintiff does not dispute and with which the defendant appears to be content, has made clearly erroneous the district court's finding that profits cannot be determined with legal certainty. Thus any assessment of profits under the "in lieu" clause is precluded. However, deducting profits, which must be taken as $899.16, from the gross award of $5,000, leaves $4,100 and odd cents attributable to damages. Since this is not an irrational amount to award as damages, and the gross award is within the statutory limits, the assessment is not to be disturbed on appeal. Douglas v. Cunningham, supra.

The final contention of the appellant for our consideration is that it did not receive a fair and impartial trial in the court below, and for that reason the case should be remanded for a new trial before another judge. In support of this contention the appellant points to several instances in the record of irrelevant and prejudicial comments and remarks by counsel for the plaintiff, and also to instances of like remarks by Judge McCarthy who presided at the trial.

It seems to us that appellant is somewhat hypercritical in its objection to certain remarks by plaintiff's counsel, prompted perhaps by excess of zeal in a hotly contested trial, particularly in view of the fact that the trial was not before a jury, and that usually, when plaintiff's counsel made comments to which opposing counsel took exception, the court remarked that it would not heed any prejudicial matter thus interjected.

As to the criticisms of the trial judge, we are bound to say that certain of his remarks in the course of the proceeding were both unseemly and uncalled for. It is the duty of the trial judge not only to afford the parties a fair trial, but also to conduct the proceedings with such poise and dignity and evident impartiality that, so far as is reasonably possible, the parties may leave his courtroom with a feeling that they have been given a fair trial. But after careful consideration of the record as a whole we have concluded that the particular remarks of the judge which would better have been left unsaid, and are better not quoted, do not rise to the seriousness of reversible error. Having regard for the convincing nature of the plaintiff's proof, and the unconvincing nature of that of the defendant, we do not feel that the decision reached by the court below can be attributed to bias and prejudice. That is to say, we feel that the defendant really had a fair and impartial trial.

The judgment of the District Court is affirmed, with the addition of an attorney's fee of $500 to counsel for the plaintiff-appellee for services on this appeal.