**ZIEGELHEIM v. FLOHR et al.**
No. 12880.

United States District Court,
E. D. New York.
Jan. 19, 1954.

Judah B. Felshin, New York City, for plaintiff.

Lawrence H. Levinson, New York City, for defendants.

INCH, Chief Judge.

Plaintiff sues for infringement of a copyrighted Hebrew prayer book printed and published by him in 1943, and for unfair competition.

The defendants' answer denied material allegations of the complaint and set up nine separate defenses which may be stated as follows: 'That plaintiff's book was not copyrightable; that it was not

original with plaintiff and did not contain any original plan or arrangement; that plaintiff had made piratical use of other books and, therefore, did not obtain a valid copyright and was himself guilty of inequitable conduct; that plaintiff had published his book prior to the date of his alleged copyright; that the text of plaintiff's book was in the public domain; that the portions of said book allegedly taken by defendants were unimportant, unsubstantial and trivial in nature; that plaintiff failed to comply with the statutory requirements by delaying the registration of the alleged copyright for almost nine years after publication and by reason thereof abandoned the copyright; that defendants published their book prior to plaintiff's perfection of his alleged copyright and that defendants have ceased and desisted from the further publication and sale of their book.

At the trial it was established that plaintiff is a publisher, printer, binder and retailer of Hebrew religious books. He carries on his business in Manhattan under the name of "Ziegelheim, New York", and he is the only publisher named "Ziegelheim" in the United States. In Vienna in 1920 he published a Hebrew prayer book known as a "Sliccoth" or "Slicha". (Plaintiff's Exhibit 1). This book, like other Sliccoths, contained the ancient Hebrew prayers of Sliccoth, together with a Jewish translation, and was used in synagogues the week before Hebrew New Year and the week between Hebrew New Year and the Day of Atonement. Admittedly, plaintiff's 1920 book was in the public domain.

Plaintiff came to the United States in 1938 and in 1943 published a new edition of the 1920 book. This 1943 book (Plaintiff's Exhibit 2) is plaintiff's copyrighted book in suit.

Defendant, Aaron Flohr, is a publisher and dealer of Hebrew books in Brooklyn, N. Y. and in June 1952 published a Sliccoth by a photo offset process. (Plaintiff's Exhibit 4. (Hereinafter Aaron Flohr will be referred to as the "defendant" and the liability of his son and wife, the other defendants herein, will be discussed below.) Despite the defendant's denial, there can be no doubt that, except for the title page and some changes in the page numbering, he caused plaintiff's entire 1943 copyrighted book to be photographically copied by photo offset process and included in his own 1952 book. Thus defendant photographically copied 415 pages of plaintiff's copyrighted book, mistakes and all, and made them part of his book. In addition, defendant's book is of a slightly different size and has a different color cover, and the text begins on the left rather than the right-hand page as appears in plaintiff's book, and defendant added 47 additional pages of prayers at the end of his book. Also, it is significant that defendant's book was published without the name of any publisher appearing therein.

Plaintiff testified that he purchased mats for his 1920 book, together with extra mats, from one Zederbaum in Petrikoff, Poland, in 1919 or 1920 and that he brought these old mats with him to the United States. It was his testimony that in preparing this 1943 book in suit he started with the old mats from the 1920 book; that his son worked over a period of four to five months correcting and making changes in approximately 300 of the 416 old mats, and in making about 150 new mats, all at a cost of $1,200 to $1,300, and that the 1943 copyrighted book was printed from these corrected and new mats.

It was defendant's contention at the trial that plaintiff's alleged corrections were trivial; that they made no addition to the text nor any change in its continuity; that they involved no element of original authorship and amounted only to minor typographical corrections which did not entitle plaintiff to a copyright. Defendant further contended that these corrections appeared in earlier Sliccoths, all of which were in the public domain (Defendants' Exhibits A, C, D and E), and that plaintiff, in fact, copied them by a photographic process mainly from a book in the public domain identical with Defendants' Exhibit C.

This was the main issue at the trial, and it should be stated that the Court has had considerable difficulty in making a determination from the testimony and the various books submitted as exhibits. In addition to the fact that all the books are printed entirely in Hebrew with Jewish translations, the pages of the defendants' book are numbered almost exclusively with Hebrew numbers, and the pages of plaintiff's book, and most of the other books submitted, contain arabic numerals which are not in consecutive order and in many instances are repetitious. However, after a laborious search for the numerous pages, words and letters to which the witnesses and parties referred, and after a painstaking physical comparison of several hundred pages of the Hebrew and Jewish texts involved, and having considered them together with the testimony at the trial, I am satisfied that plaintiff has sustained the burden of proving that he is the owner of a valid copyright which defendant has infringed.

■■ The law applicable to the validity of this copyright is found in Alfred Bell & Co. v. Catalda Fine Arts, 2 Cir., 191 F.2d 99, 102–103, where the Court said in part:

> "It is clear, then, that nothing in the Constitution commands that copyrighted matter be strikingly unique or novel. Accordingly, we were not ignoring the Constitution when we stated that a 'copy of something in the public domain' will support a copyright if it is a 'distinguishable variation'; or when we rejected the contention that 'like a patent, a copyrighted work must be not only original, but new', adding, 'That is not * * * the law as is obvious in the case of maps or compendia, where later works will necessarily be anticipated.' All that is needed to satisfy both the Constitution and the statute is that the 'author' contributed something more than a 'merely trivial' variation, something recognizably 'his own.' Originality in this context 'means little more than a prohibition of actual copying.' No matter how poor artistically the 'author's' addition, it is enough if it be his own. Bleistein v. Donaldson Lithographing Co., 188 U.S. 239, 250, 23 S.Ct. 298, 47 L.Ed. 460."

■ Thus the test to be applied to plaintiff's 1943 book is whether it was a "distinguishable variation" from his 1920 book and other books in the public domain, whether he "contributed something more than a 'merely trivial' variation, something recognizably 'his own.'"

While I have some doubt on this record as to the technical process used by plaintiff in correcting and changing the text of his 1920 book, that is, whether it was done by using hand tools on old mats and by making new mats, as claimed by plaintiff, or whether it was done by photographically copying various pages from other Sliccoths in the public domain, notably Defendants' Exhibit C, or possibly by a combination of both processes, the fact remains that plaintiff's book is different from any other book published up to that time. It is true that many of plaintiff's alleged "changes" resulted in nothing more than making the 1920 text clearer and more legible in the 1943 edition. Nevertheless, there are numerous instances where letters, words or lines of the text were added, deleted or rearranged, so that the differences between the 1920 and 1943 editions are sufficiently substantial and multitudinous to meet the standard of a "distinguishable variation", something more than a "merely trivial" variation. Plaintiff's 1943 book is likewise a "distinguishable variation" from Defendants' Exhibit C and the other books submitted as being in the public domain, since it contains a substantial number of changes which are unique and appear only in plaintiff's 1943 book, for example, page 32, the unnumbered page opposite page 95, pages 66, 109, 81, 100, 260, 185, 205, the page opposite page 208, pages 210, 226, 239 (second occurrence) and the second unnumbered page following page 283.

It is plain that it was necessary for plaintiff to consult other Sliccoths in order to make the above changes, and even if he secured all his material from publications in the public domain, nevertheless, his 1943 book was the product of his own labor, judgment, money and skill and as such was copyrightable as a new version of a work in the public domain. Title 17 U.S.C.A. § 7; Alfred Bell & Co. v. Catalda Fine Arts, supra, 191 F.2d at pages 104–105.

Apparently defendant himself considered plaintiff's book a sufficiently improved version to warrant his photographing it almost in its entirety and placing it on the market for sale.

■ The other defenses raised by defendant are also without merit. Defendant contends that plaintiff's copyright notice was insufficient. The notice in plaintiff's book was as follows:

Published and Printed by
"Ziegelheim", New York
Printed in U.S.A. Copyright 1943

Defendant claims that the name "Ziegelheim" is an insufficient designation of the owner of the copyright and that it might refer to plaintiff or any of his relatives, and further, that while it indicates that the book was published and printed by "Ziegelheim", it does not state the name of the alleged copyright owner. However, the legend "Copyright 1943" appears directly below and in close proximity to the words "Ziegelheim", New York, and the proof is clear that there was only one "Ziegelheim" in the publishing business in New York, so that the notice was a sufficient compliance with the requirements of the statute. See Shapiro, Bernstein & Co. v. Jerry Vogel Music Co., 2 Cir., 161 F.2d 406, 409; certiorari denied 331 U.S. 820, 67 S.Ct. 1310, 91 L.Ed. 1837, and cases cited.

■ Defendant also complains that plaintiff published and distributed his book early in 1943, whereas the application for copyright (Defendants' Exhibit 6) stated that the date of publication as December 20, 1943. It is said, therefore, that plaintiff's book, published and sold before December 20, 1943, fell into the public domain. Plaintiff testified that he filed his application without the assistance of a lawyer and that the reason he gave the date December 20, 1943 as the date of publication was because that was the date on which he completed the printing of 10,000 copies of the book. All copies of plaintiff's book contained a notice of copyright, and the inaccuracy as to the date of publication in the affidavit accompanying the application for copyright, standing alone, did not affect the validity of the copyright, particularly since it in no way prejudiced defendant. See Wrench v. Universal Pictures Co., Inc., D.C., 104 F.Supp. 374, 379.

■ Another issue raised by defendant was that while plaintiff's book was published in 1943, the copyright certificate was not obtained until 1952 and that by reason thereof plaintiff's claim of copyright was abandoned and plaintiff was guilty of laches. The Supreme Court of the United States has held that mere delay in obtaining the certificate does not invalidate the copyright. Washingtonian Pub. Co. v. Pearson, 306 U.S. 30, 59 S.Ct. 397, 83 L.Ed. 470. Plaintiff's claim of copyright "came to fruition immediately upon publication" of his book with the copyright notice. 306 U.S. at page 39, 59 S.Ct. at page 402. "Furthermore, proper publication gives notice to all the world that immediate copyright exists. One charged with such notice is not injured by mere failure to deposit copies. The duty not to infringe is unaffected thereby. A certificate of registration provided for by section fifty-five apparently may be obtained at any time and becomes evidence of the facts stated therein." 306 U.S. at pages 40–41, 59 S.Ct. at page 402. Also, "while no action can be maintained before copies are actually deposited, mere delay will not destroy the right to sue." 306 U.S. at page 42, 59 S.Ct. at page 403. I find here no evidence of any intention on the part of plaintiff to abandon his claim of copyright, and he filed his application for

a certificate approximately two months after the publication of defendant's book.

As to damages, it appears that defendant printed 4,100 books. If the statutory rate of $1 per copy were to be applied, plaintiff would be entitled to $4,100. Title 17 U.S.C.A. § 101(b). However, the total of plaintiff's damages and defendant's profits is computed by plaintiff himself to be a substantially lesser amount. Plaintiff estimates his loss of sales at $1,335 and defendant's profits at $901.60, or a total of $2,236.60.

Plaintiff's record of sales (Plaintiff's Exhibit 18) indicates that his sales on order for the years indicated were as follows:

| Year | Copies |
|------|--------|
| 1950 | 1232 |
| 1951 | 1532 |
| 1952 | 1355 |
| 1953 | 150 |

Defendants' book was published in June 1952. Plaintiff's sales on order do not appear to have been substantially affected in 1952 by the appearance of defendant's book on the market, because plaintiff sold 703 books during the first half of 1952 and 652 books during the second half of 1952, while his average sales for the second half of 1950 and 1951 appears to have been 678 copies.

However, plaintiff's average sales on order for 1950 and 1951 amounted to 1,382 copies, which approximates his sales of 1,355 in 1952, and his sales on order in 1953 were only 150 copies, so that plaintiff lost 1,232 sales on order in 1953 when compared with his average sales on order in 1950 and 1951. Plaintiff also testified to a loss of sales over the counter in 1953 of approximately 450 copies. Thus plaintiff's total loss of sales in 1953 were approximately 1,682 copies at 75 cents per copy, or a total of approximately $1,261.50.

As for defendant's profits, I find that more than the cost of printing and bind-ing should be included in the cost of publication of defendant's books and further that defendant cannot be assumed to have sold 1,710 copies of his book in 1953, so that defendant's profits were substantially less than the $901.60 computed by plaintiff. Consequently, under all the circumstances of this case, damages in the amount of $1,700 appears to me to be reasonable and just.

I am not satisfied that plaintiff has sustained the burden of proof that defendant's wife and son were contributory infringers with defendant, or that they were guilty of any unfair competition, and I do not hold them liable to plaintiff in any amount. Accordingly, defendants Joseph Flohr and L. Flohr (now known as Clara Flohr), are entitled to judgment dismissing the complaint without costs.

In view of all the above it becomes unnecessary to decide plaintiff's separate cause of action for unfair competition against defendant Aaron Flohr.

Plaintiff is entitled to a full bill of costs against Aaron Flohr, but since it appears to have heretofore been a fairly common practice for publishers of these books to copy rather freely from each other, and since much of plaintiff's book was in the public domain, and defendant honestly, but mistakenly, believed that plaintiff was illegally attempting to copyright and monopolize the printing of ancient prayers, I exercise my discretion, now that the dispute is resolved, not to burden defendant with attorney's fees in addition to plaintiff's estimated damages.

The order to be submitted herein will also provide for an injunction and that defendant deliver for destruction all infringing copies, plates, etc. including all books on consignment but still owned by defendant.

Findings of fact and conclusions of law are being filed herewith.

Settle order.