**PRESTIGE FLORAL, SOCIETE ANON-YME, A. E. DeCamp and A. J. Fristot, Plaintiffs,**

v.

**CALIFORNIA ARTIFICIAL FLOWER COMPANY, (Inc.) and Calart (Inc.), Defendants.**

United States District Court
S. D. New York.
Jan. 5, 1962.

Kane, Dalsimer & Kane, New York City, for plaintiffs, Philip Dalsimer, and John Kurucz, New York City, of counsel.

Barlow & Barlow, Providence, R. I., Herbert B. Barlow, Jr., Providence, R. I., of counsel, and Keith, Bolger, Isner & Byrne, New York City, for defendants, Thomas J. Byrne, Jr., New York City, of counsel.

FEINBERG, District Judge.

This is a motion for a preliminary injunction. Plaintiff Prestige Floral, Societe Anonyme, ("Prestige") filed its complaint on June 22, 1961, alleging

copyright infringement under 17 U.S.C. § 101 and seeking a permanent injunction, damages, and other relief. Jurisdiction is vested in this Court by 17 U.S.C. § 112 and 28 U.S.C. § 1338. The article allegedly infringed is a molded polyethylene flower in the form of a Charles lilac.[1]

Defendant California Artificial Flower Company (Inc.) ("California") is a Rhode Island corporation and defendant Calart (Inc.) is a New York corporation. Both defendants have an office and a place of business at 225 Fifth Avenue, New York City. Defendants filed their answer on July 10, 1961. Beginning early in August 1961, settlement discussions were held intermittently. These proved abortive and on October 30, 1961, plaintiff noticed its motion for a preliminary injunction returnable on November 14, 1961. Thereafter, affidavits were submitted to the Court by plaintiff Prestige and by defendants. In addition, a hearing was held on December 11, 1961,[2] at which various exhibits were introduced and three witnesses testified: Donald A. Paulsen, an officer of D. Arnold Associates, exclusive distributor in this country for Prestige's artificial flowers; Edward R. Hughes, an expert on thermoplastic materials and molding; and Michele D'Agnillo, the principal of defendant corporations. From the affidavits, the exhibits, and the testimony of witnesses, and giving effect to my judgment as to the credibility of the witnesses where appropriate, I find the facts as hereinafter set forth.

Prestige is a French corporation engaged in designing, creating and manufacturing molded polyethylene flowers. Prestige has pioneered in the artificial flower field and enjoys a reputation for products of high quality and as a leader in the creation of new styles. Prestige created as an original work of art a sculptured lilac, made out of polyethylene, and first published this work on or about September 19, 1959. On or about September 22, 1960, a replica of the lilac was deposited by Prestige with the Copyright Office together with its application for copyright registration of the article as a sculpture, Class G. Thereafter, copyright registration No. Gp 25925 was issued.

Prestige's copyright lilac has at all times since publication had the copyright notice "© PRESTIGE FLORAL" molded on the long stem of the lilac near its base and on the underside of one of its leaves. A new version of the lilac was introduced into this country in the spring of 1961. This flower had similar copyright notices on the stem and leaf. The later version of the lilac differed from the original only by the inclusion of additional foliage on the main stem and is sufficiently similar to the earlier model to be covered by copyright registration No. Gp 25925.

Defendant California is well known in the artificial flower market offering a line of over seven hundred flowers and fruits. Some of its items are made in Rhode Island and others are imported. Defendants have offered for sale and sold artificial lilacs which Prestige claims infringe its copyright. The allegedly infringing lilacs were imported by defendant from a company in Hong Kong which admits making a copy of another artificial flower of French origin. Prior to ordering the lilacs from Hong Kong, defendants had knowledge of Prestige's lilac and, in fact, had tried to order a small supply of them early in

---

1. The complaint also included a second count for infringement of a copyrighted artificial geranium. Plaintiffs on this second cause of action are A. E. DeCamp and A. J. Fristot. At the hearing on the preliminary injunction, defendants stipulated to entry of a preliminary injunction with regard to the geranium, reserving their rights for trial on the suit for a permanent injunction.

2. In the few weeks prior to the hearing there were conferences between the Court and counsel regarding procedural matters and the practicality of getting testimony from a witness in France. Proposed findings of fact and conclusions of law were to be submitted by December 18, 1961; the date was later advanced to December 21, 1961.

January 1961 from Prestige's distributor in New York. Copying of artificial flowers in Hong Kong is well known in the trade.

Artificial lilacs are a seasonable item in greatest demand during the early spring. The season for lilacs begins in January and lasts through Easter. In November and December most wholesalers will decide which items they will carry during the spring season. Prestige's exclusive distributor in this country has conditioned its acceptance of Prestige's lilacs on Prestige's success in stopping the importation of "pirated duplicates * * * from Hong Kong." If this is not stopped, the distributor reserves the right to cancel its order. The lilac sold by defendants is offered at a price substantially lower than that of the Prestige lilac.

## I

It is settled in copyright infringement cases that a preliminary injunction should issue when the plaintiff makes a prima facie showing that his copyright is valid and that the defendant has infringed. H. M. Kolbe Co. v. Armgus Textile Co., 279 F.2d 555 (2 Cir. 1960); Houghton Mifflin Co. v. Stackpole Sons, Inc., 104 F.2d 306, 307 (2 Cir.) cert. denied 308 U.S. 597, 60 S.Ct. 131, 84 L.Ed. 499 (1939); Trifari, Krussman & Fishel, Inc. v. Charel Co., 134 F.Supp. 551, 554 (S.D.N.Y.1955).

Initially, defendants have raised several questions as to the validity of plaintiff's copyright. First, they attack the copyright generally, claiming that there is not sufficient artistry in the creation of artificial flowers to justify copyright protection. Second, they raise various narrower objections to the copyright, including claims that the copyright notice on plaintiff's flowers was defective

and that plaintiff has not produced a specimen of the alleged copyrighted lilac.

In connection with the broad attack on the copyright, 17 U.S.C. § 4 provides:

"The works for which copyright may be secured under this title shall include all the writings of an author."

17 U.S.C. § 5 provides that the application for registration shall specify to which of various enumerated classes the work in which copyright is claimed belongs. Plaintiff's application specified Class G, covering works of art, as the applicable class.[3] The basic question, therefore, is whether plaintiff's artificial flower is copyrightable as a work of art.

A recent comprehensive report of the Register of Copyrights[4] summarized pertinent court decisions on copyrightability as follows:

"It is well established, by a long line of court decisions, that in order to be copyrightable under the statute a work must meet the following requirements:

"(a) The work must be in the form of a 'writing,' i. e., it must be fixed in some tangible form from which the work can be reproduced.

"(b) The work must be a product of original creative authorship. Two interrelated elements are involved here: originality and creativity.

"(1) The work must be original in the sense that the author produced it by his own intellectual effort, as distinguished from merely copying a preexisting work. It need not be novel (as a patentable invention must be); in theory at least, it could be precisely the same as a preexisting work as long as it

---

3. The statutory description of the class in 17 U.S.C. § 5(g) is "Works of art; models or designs for works of art." See 37 C.F.R. § 202.10.

4. Copyright Law Revision, House Comm. on the Judiciary, 87th Cong., 1st Sess.

(Comm.Print 1961). This report is the culmination of a program of scholarly studies by the Copyright Office preparatory to a general revision of the copyright law.

was created by the author independently.

"(2) The work must represent an appreciable amount of creative authorship." [5]

The parties have not cited any cases involving artificial flowers. However, there are closely analogous situations which indicate that plaintiff's artificial flower may properly be the subject of a copyright. In Peter Pan Fabrics, Inc. v. Candy Frocks, Inc., 187 F.Supp. 334 (S.D.N.Y.1960), this Court granted a preliminary injunction in an infringement action where the copyrighted work of art was a floral design for a dress fabric. The Court pointed out (at 187 F.Supp. 336) that "Obviously, floral patterns are in the public domain, but plaintiff has contributed enough originality in the designs to qualify them as distinguishable variations." [6] Similarly, in F. W. Woolworth Co. v. Contemporary Arts, Inc., 193 F.2d 162 (1 Cir.1951), aff'd 344 U.S. 228, 73 S.Ct. 222, 97 L.Ed. 276 (1952), copyright protection was afforded to statutes of a "Cocker Spaniel in Show Position" sold commercially. In its opinion, the Court of Appeals for the First Circuit said (193 F.2d at 164):

"It is the well established rule that a copyright on a work of art does not protect a subject, but only the treatment of a subject. * * * The proposition was elaborated by Mr. Justice Holmes in Bleistein v. Donaldson Lithographing Co. * * * wherein with respect to cromolithographs of a circus scene prepared for advertising purposes he said: 'But even if they had been drawn from the life, that fact would not deprive them of protection. The opposite proposition would mean that a portrait by Velasquez or Whistler was common property because others might try their hand on the same face. Others are free to copy the original. They are not free to copy the copy. * * * The copy is the personal reaction of an individual upon nature. Personality always contains something unique. It expresses its singularity even in handwriting, and a very modest grade of art has in it something irreducible, which is one man's alone. That something he may copyright * * *.' Here the 'something irreducible' * * * was shape. * * * It means the proportion, form, contour, configuration, and conformation, perhaps the latter in details too subtle for appreciation by anyone but a fancier, of the dog represented by the sculptured work of art."

In Mazer v. Stein, 347 U.S. 201, 74 S.Ct. 460, 98 L.Ed. 630 (1954), the question raised was whether statuettes used as bases for electric lamps were protected by the copyright of the original models. The statuettes were of Balinese dancers. The Supreme Court held that use in industry would not bar or invalidate the copyrights.

One of the studies upon which the Report of the Register of Copyrights, supra, was based pointed out the following on the recent trend in copyrighting three-dimensional objects:

"The courts in recent years, particularly since Mazer v. Stein, are beginning to realize the validity of the copyright approach and are gradually overcoming their hesitation to hold, expressly or impliedly, that a three-dimensional object is a 'writing.' Perhaps the Copyright Office anticipated this development by changing its regulation with regard to the definition of the term 'work of art.' Prior to 1949 three-dimensional objects, intended primarily for commercial use, were not ordinarily granted registration. On

---

5. Ibid, p. 9.

6. In Scarves by Vera, Inc. v. United Merchants & Mfgrs., Inc., 173 F.Supp. 625, 627 (S.D.N.Y.1959), this Court noted that "Obviously, fish, sailor suits and ice cream parlor trappings are in the public domain," but silk screen paintings of these subjects used in the manufacture of blouse materials were protected.

the contrary, applicants were advised that 'protection of productions of the industrial arts, utilitarian in purpose and character, even if artistically made or ornamented, depends upon action under the patent law.' However, in 1949 section 202.8 of the Regulations was changed so as to make registrable the artistic features of jewelry, enamel, glassware, tapestries, and other similar materials. Such registration was to cover only the artistic aspects, as distinguished from 'the mechanical or utilitarian' aspects. When the validity of this regulation was challenged in Mazer v. Stein, the Register of Copyrights, as amicus curiae, took the position that the new regulation actually reflected the previous practice of the Office. The brief said in this regard—

> that the Copyright Office has consistently since 1909—and even before then—registered works like the one in this case following the clearly stated mandate of Congress.

"In August, 1956, the Copyright Office issued regulations which, in greater detail than ever before, explicitly describe what can be registered. These regulations do not talk in terms of 'writings' but do require that any object offered for registration meet at least minimal standards of originality and creativity, as well as fall within one of the classes enumerated in section 5 of the copyright statute." [7]

■ Applying these principles and analogous decisions to the instant case, it would seem that though a flower, like a dog, is a creation of nature, a likeness of it may be copyrighted. This conclusion seems particularly justified when the creation of the likeness involves, in the words of the Woolworth case, supra,

numerous and detailed decisions as to "proportion, form, contour, configuration, and conformation." Plaintiff's expert testified at length as to the "series of determinations" that had to be made by the creator of plaintiff's artificial flowers. Since plaintiff's lilac reflects originality and a substantial degree of skill and independent judgment, it is a proper subject for copyright. Mazer v. Stein, supra; Alfred Bell & Co. v. Catalda Fine Arts, 191 F.2d 99 (2 Cir.1951).

## II

■ Defendants also press narrower objections to the copyright notice. Defendants first contend that the notices are insufficient because they cannot be seen by the naked eye. The notice on the stem though is clearly visible to the naked eye. The notice on the leaf, however, is considerably more difficult to make out. That it is on the underside of a leaf would not of itself seem objectionable. Coventry Ware, Inc. v. Reliance Picture Frame Co., 288 F.2d 193, 195 (2 Cir.) cert. denied 368 U.S. 818, 82 S.Ct. 34, 7 L.Ed.2d 24 (1961); Scarves by Vera, Inc. v. United Merchants & Mfgrs., Inc., supra. The notice can be seen by the naked eye although "close examination is required to locate it." Trifari, Krussman & Fishel, Inc. v. Charel Co., supra. Even if this were not so, I find from the affidavits and evidence before me that plaintiff has made a prima facie case that, before engaging in the sale of their lilacs, defendants had actual notice of plaintiff's copyright. Under these circumstances, I do not believe that difficulty in discerning the notice on the leaf should of itself prevent the granting of a preliminary injunction if plaintiff is otherwise entitled to it. Trifari, Krussman & Fishel, Inc. v. B. Steinberg-Kaslo Co., 144 F.Supp. 577, 581 (S.D.N.Y.1956); accord, Peter Pan Fabrics, Inc. v. Martin Weiner Corp., 274 F.2d 487, 490 (2 Cir. 1960).

7. Study No. 3, The Meaning of "Writings" in the Copyright Clause of the Constitution, pp. 100–101, Subcommittee on Patents, Trademarks, and Copyrights, Senate Committee on the Judiciary, 86th Cong., 1st Sess. (Comm.Print 1960); also published as Note, 31 N.Y.U.L.Rev. 1263, 1303 (1956).

Second, defendants urge that "* * * there is a strong possibility that the copyright here in suit is invalid because of a postdated notice thereby claiming a date a year too late, and thereby claiming a year more for monopoly. * * *" It should be noted that although apparently no date was necessary on plaintiff's flower, Fleischer Studios v. Ralph A. Freundlich, Inc., 73 F.2d 276, 278 (2 Cir.1934) the legend "MOD. DEPOSE 1961" did appear on the stem of plaintiff's later lilac,[8] although the publication date was 1959.[9] Defendants cite in support of their position Baker v. Taylor, 2 Fed.Cas. 478, No. 782 (C.C.S.D.N.Y.1848) and American Code Co. v. Bensinger, 282 Fed. 829, 836 (2 Cir.1922). While it may be possible to limit the effect of these cases,[10] it would seem that they are inapplicable on the facts of the instant case. Defendants do not contend that the notice on the leaf was inaccurate although, as noted, they claim it is not sufficiently legible. Since the notice on the leaf and the notice on the steam differ as to date, this may be confusing. But I do not believe that plaintiff's copyright notice is thereby rendered so affirmatively misleading as to justify invalidating the copyright. The decisions upon which defendants rely require at least this likelihood. National Comics Publications v. Fawcett Publications, 191 F. 2d 594, 602 (2 Cir.1951). Further, I do not find on the record now before the Court that defendants were in fact misled.

Defendants also argue that plaintiff did not produce a specimen of the lilac filed in the Copyright Office, and that plaintiff has failed to prove exactly what is covered by its copyright. On the affidavits and evidence before me, however, I feel this contention is incorrect and that plaintiff has made a prima facie showing. The affidavits submitted include one by plaintiff's trial counsel that he personally supervised the application for the copyright registration and submitted a three-dimensional replica of the copyrighted work. While it is true that the Copyright Office has been un-

---

8. On plaintiff's Exhibit D (the earlier model) the notice appears on the stem in the following form:

© PRESTIGE FLORAL 1959 MOD. DEPOSE

and on the underside of a leaf in the following form:

©
PRESTIGE FLORAL
1959
MODELE DEPOSE

On Plaintiff's Exhibit C (the later model), the notice appears on the stem in the following form:

© PRESTIGE FLORAL
MOD. DEPOSE 1961

and on the underside of a leaf in the following form:

©
PRESTIGE FLORAL
1959
MODELE DEPOSE

9. Defendants also contend in submitting proposed finding of fact No. 4 that plaintiff admitted that its earlier lilac was on sale in 1958, one year prior to the date of publication stated in the Certificate of Registration (plaintiff's Exhibit A at the hearing). This is apparently based upon a statement by Mr. Paulsen on December 11, 1961, that plaintiff's earlier lilac was introduced into this country "approximately 3 years ago." (Tr., p. 13) However, on cross-examination, Mr. Paulsen indicated that the first items received from Prestige Floral were "extremely close to the date of the copyright." (Tr., p. 35), by which I assume he meant September 1959, and I find that plaintiff has made a prima facie case that the date of publication was actually 1959, not 1958. Cf. also 17 U.S.C. §§ 209, 210 to the effect that the statement in plaintiff's Certificate of Registration is "prima facie evidence of the facts stated therein."

10. In Baker v. Taylor, there was more than a mistake, because plaintiffs there knew of the error before publication and did not trouble to correct it; the statement in Bensinger is a dictum. See Heim v. Universal Pictures Co., 154 F.2d 480, 490 (2 Cir. 1946), indicating that these cases still represent the law; but cf. Peter Pan Fabrics, Inc. v. Martin Weiner Corp., supra, 274 F.2d 490; Ziegelheim v. Flohr, 119 F.Supp. 324, 328 (S.D.N.Y.1954); Trifari, Krussman & Fishel, Inc. v. B. Steinberg-Kaslo Co., supra, 144 F.Supp. 581.

able to locate the deposited work in its files, the affidavit of plaintiff's counsel, the colloquy in Court between respective counsel and the stipulation thereon,[11] and the testimony of Mr. Paulsen [12] all support the conclusion that the lilacs produced in Court by plaintiff are specimens of what was copyrighted.

### III

In addition to validity of the copyright, it is, of course, essential for plaintiff to make a prima facie case of infringement. I find from the affidavits and evidence that defendants had access to the copyrighted lilac. Arc Music Corp. v. Lee, 296 F.2d 186 (2 Cir.1961). Also, plaintiff's expert testified at length about the similarity between plaintiff's and defendants' lilacs and the extreme unlikelihood that such similarity was brought about by chance. It is true that the test for copying cannot be stated with precision. Thus, in Peter Pan Fabrics, Inc. v. Martin Weiner Corp., supra, 274 F.2d at 489, Judge Learned Hand stated:

"The test for infringement of a copyright is of necessity vague. In the case of verbal 'works' it is well settled that although the 'proprietor's' monopoly extends beyond an exact reproduction of the words, there can be no copyright in the 'ideas' disclosed but only in their 'expression.' Obviously, no principle can be stated as to when an imitator has gone beyond copying the 'ideas,' and has borrowed its 'expression.' Decisions must therefore inevitably be *ad hoc.* In the case of designs, which are addressed to the aesthetic sensibilities of an observer, the test is, if possible, even more intangible. No one disputes that the copyright extends beyond a photographic reproduction of the design, but one cannot say how far an imitator must depart from an undeviating reproduction to es-

cape infringement. In deciding that question one should consider the uses for which the design is intended, especially the scrutiny that observers will give to it as used. * * * However, the ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard their aesthetic appeal as the same."

Applying the test which rests on the intended use of the copyrighted article, and basing my conclusion upon the affidavits and evidence before me and on my own comparison of the flowers, I find that the allegedly infringing lilacs are copies of plaintiff's lilac and that the claimed variations between them do not sufficiently differentiate them.

Defendants have also contended that plaintiff has not shown sufficient likelihood of immediate irreparable injury to justify the granting of a preliminary injunction. While no detailed proof of such harm is required on this motion, Rushton v. Vitale, 218 F.2d 434, 436 (2 Cir.1955), plaintiff has made out a prima facie case—and I do so find—that unless afforded preliminary relief, it will suffer immediate substantial and irreparable injury.[13]

Therefore, for the reasons set forth above, I conclude that plaintiff has made a prima facie case that it has validly copyrighted the artificial flower in issue, that defendants have been selling or offering for sale lilacs copied from plaintiff's lilac, that this infringes plaintiff's copyright, that defendants' various contentions are lacking in merit, and that plaintiff will suffer immediate irreparable injury unless granted preliminary relief. Consequently, plaintiff's motion for a preliminary injunction should be and hereby is granted as to both defendants.

Settle order on notice on the first cause of action. The findings and con-

---

11. Tr., pp. 11–12.

12. Tr., pp. 13–15, 35.

13. See Peter Pan Fabrics, Inc. v. Brenda Fabrics, Inc., 169 F.Supp. 142 (S.D. N.Y.1959).

clusions required by Rule 52(a), Fed. Rules Civ.Proc., 28 U.S.C., are contained in this opinion. Plaintiff must furnish security in the amount of $10,000 to defendants.