**B. WILMSEN, INC., Noel Decorations, Inc., and Krain & Canton, Inc., Plaintiffs,**

v.

**CONSOLIDATED NOVELTY CO., Inc., and Joseph P. Kelly, Collector of Customs, Port of New York, Defendants.**

United States District Court
S. D. New York.

Nov. 17, 1965.

Abeles & Clark, New York City, for plaintiffs; John S. Clark, New York City, of counsel.

Davis, Gilbert, Levine & Schwartz, New York City, for defendants; Patricia Hatry, New York City, of counsel.

COOPER, District Judge.

This is a motion for a preliminary injunction pursuant to Rule 65, F.R.Civ.P. which was brought on for hearing on November 3, 1965 by order to show cause signed by Judge Lloyd F. MacMahon on October 26, 1965.

The jurisdiction of the Court is invoked on the ground that this case arises under Title 17, United States Code, Section 1 et seq., the Copyright Law of the United States, and 28 U.S.C. § 1338(a). It is an action for a declaratory judgment pursuant to 28 U.S.C. § 2201 instituted to determine the validity of a copyright entitled "Christmas Tree Branch and Leaves," registered in the name of the defendant and identified: "March 4, 1964, Class G, No. Gp 41064." The facts and conclusions of law are found by the Court as follows:

Plaintiffs and defendant Consolidated Novelty Co. Inc. (hereinafter "Consolidated") are each engaged in the business of manufacturing and importing artificial Christmas trees and decorations made from polyethylene. The defendant Joseph P. Kelly, as Collector of Customs for the port of New York, has retained in customs custody pursuant to 19 C.F.R. § 11.20 four shipments of artificial branches and leaves consigned to plaintiffs.

There is no real dispute here that the detained merchandise is an actual copy or substantial reproduction of goods purportedly protected by defendant's copyright No. Gp 41064. On or about September 16, 1965 Consolidated had advised the Collector of Customs that several companies, including the three plaintiffs herein, might be importing merchandise in violation of its copyright. The Collector of Customs indicates he will continue to detain any further "piratical copies" of the copyrighted item. Consolidated has posted a bond intended to cover all damage plaintiff might sustain as a result of the detention.

Unless plaintiff obtains delivery of the confiscated merchandise and similar shipments thereof in the immediate future, they will not be able to meet their commitments for the 1965 Christmas season. Failure to fulfill customer orders at this late hour in the distribution of Christmas articles will result in an immediate and probably substantial loss of business, not to mention damage to plaintiff's good will. Furthermore, plaintiff alleges that the exigencies of the situation are such that continued detention of present and future shipments would lead to discharge of more than a "score" of employees otherwise engaged in the preparation of orders for Christmas decorations.

As between plaintiffs (and other importers who might be similarly situated) and defendant Consolidated, this Court is impressed with the fact that a crucial situation is present here (with the Christmas shopping season already in progress) by the continued detention of plaintiffs' Christmas tree branches, and where there is substantial likelihood plaintiffs will ultimately prevail. Time being of the essence, if injunctive relief is warranted, it is now.

The plaintiffs, in contending that detention is unwarranted, urge three grounds as establishing the invalidity of defendant's copyright: (1) the subject thereof is not the proper subject of copyright; (2) Consolidated made fraudulent misrepresentations on its application therefor, and (3) it was first published and sold without notice of copyright thereon. (Complaint, pp. 2–3). Besides traversing these claims, defendant argues that "the clean hands doctrine bars plaintiffs from the preliminary equitable relief" sought and that Consolidated is the "author" of this copyrighted work.

The bulk of the record in this case consists of assertions in affidavit form. Oral argument afforded counsel on November 3, 1965 could only highlight these assertions. They present a veritable thicket of conflicting averments, the unravelling of which can result only from a full trial of the issues wherein credibil-

ity of the evidence can be properly assessed and accorded the weight it deserves. See Telegraph Delivery Service v. Florists Tel. Service, 12 F.R.D. 342 (S.D.N.Y.1952). Without more, the record now before the Court hardly offers the evidentiary foundation for a preliminary injunction on each of the grounds asserted.

To solve some of the legal problems (the issues of fraud and lack of originality) posited by the parties, the Court would first have to choose one (or a part thereof) of the two varied accounts of the background facts, each forcefully represented as the truth of the case. Such an attempt to separate fact from fabrication by sense of impression is indeed an illusory task. For example, Krain, plaintiffs' president, says it was his own idea to market a Christmas tree consisting of polyethylene leaves; Adelman, Consolidated's president, says he asked Krain to obtain such a tree and, in essence, Krain was defendant's employee. To further illustrate, Krain claims Consolidated procured the copyright registration; Adelman says Krain did.

Nonetheless, the proof, albeit scant, upon the issue of first publication without notice warrants temporary injunctive relief. In reviewing and evaluating this evidence the Court stresses that it is not, at this stage, sitting as the final arbitor of the ultimate fact of whether there was a first publication without notice. At present, evidence on that score is of much greater convincing power than anything Consolidated has presented to the contrary and manifests a substantial likelihood that plaintiff would prevail on this issue at trial.

Exhibit 1 (attached to Plaintiff's Reply Affidavit dated November 2, 1965) is a letter, the authenticity of which has not been put in question, from Consolidated to Davie, Boag & Co., the foreign manufacturers of the copyrighted item, under date of May 17, 1963. The letter asks:

\* \* \* \* \* \*

[W]e should like to have you airmail to us, 6 of the largest size branches with the following molded into the stem of each branch.

CONSOLIDATED NOVELTY.
We will then register this tree in its entirety for copyrights here in the United States and eliminate as much competition for this year and the following years as we can on this tree \* \* \*. The package with 6 branches with a copyright mark, should be mailed to the writer reference to this letter number. Please undertake the necessary steps to have this done as quickly as possible.

\* \* \* \* \* \*

The affidavit of Davie, Boag's export Manager, Mr. Bakhoven (sworn to on October 22, 1965 before a Commissioner for Oath in the Courts of Justice, Hong Kong) corroborates receipt of this letter wherein he says (¶ 5, p. 2):

In late May of 1963, we were asked by Consolidated \* \* \* to mould a copyright notice onto the stem of the cedar branches although the manufacturers had manufactured large quantities thereof and the same had been sold by us in the United States. This was done on copies, manufactured and sold after 30th May, 1963.

The fair conclusion to be drawn at this time from these two items is that prior to May 30, 1963 branches sent to the United States did not contain notice of copyright.

The record also contains four examples of customer purchase orders received by the plaintiff. In Adelman's words (Affidavit of Henry Adelman, sworn to October 29, 1965, p. 11):

The fourth order, apparently dated March 15, 1963, was replaced by the second order of May 10, 1963, as per note at bottom of fourth order. This order, then, is an obvious duplication. To the best of my recollection, the two remaining orders, dated May 8 and May 10, 1963, were filled with cedar trees bearing our copyright notice.

The May 10, 1963 order is particularly important as it alone represents 200 pieces of the six foot polyethylene tree for a

total price of $2900. The original order, as indicated, was placed in March. When read in conjunction with Bakhoven's further statement (Bakhoven affidavit, ¶3) that "the first order for artificial cedar branches to be made up on 6′ trees was placed by Consolidated * * * on 29 March, 1963 * * * first shipment * * * was effected on 23rd May, 1963," it becomes apparent that plaintiff at trial has a substantial likelihood of proving there was a publication without notice. This is so because the shipment pursuant to the May 10 order was most probably part of (or all of) Davie, Boag's first large shipment to the United States which did not bear notice of copyright. This conclusion is supported by the fact that there previously had been imported to the United States in January and March of 1963 artificial branches and leaves, the subject matter of the instant copyright. Adelman characterized (in conclusory fashion) these items as "samples" which were the subject of only "limited" publication; but by May, it is quite likely that unrestricted sales had taken place. Both Krain and his vice-president in charge of sales (Jonas Palant) here claim that large quantities were sold without notice during the first six months of 1963.

## CONCLUSIONS OF LAW

At the outset, the Court should note that plaintiff does not present substantial evidence that "Christmas Tree Branch and Leaves" is not subject to copyright for lack of originality. See Prestige Floral, Societe Anonyme v. California Artificial Flower Co., Inc. et al., 201 F.Supp. 287 (S.D.N.Y.1962) and the cases cited therein. As to plaintiffs' other contentions on this issue, the Court makes no determination except to hold that there is a substantial likelihood that plaintiff can show at trial first publication without notice so as to divest defendant copyright protection under 17 U.S.C. § 10. Fleischer Studios, Inc., et al. v. Ralph A. Freundlich, Inc., et al., 73 F.2d 276 (2d Cir. 1934). Furthermore, the Court holds that there has been a showing of "irreparable injury."

The validity of the copyright being drawn substantially in question, this Court finds the Collector of Customs to be without authority under 17 U.S.C. § 106 to detain merchandise purportedly copies of goods claimed protected under copyright No. Gp 41064. In making this determination, the Court is constrained to make the preliminary injunction as limited as possible in view of its evidentiary foundation and consistent with the nature of the injury which makes such injunction necessary.

## DISPOSITION

(1) Accordingly, it is the order of this Court that defendant, Joseph P. Kelly, Collector of Customs for the Port of New York, shall be and hereby is restrained from retaining and refusing to admit to entry any merchandise consigned to plaintiffs (or other importers) on the ground that such merchandise consists of piratical copies of defendant's copyright No. Gp 41064, such order to remain in force and effect up to January 3, 1966 at 5 P.M.

(2) It is further ordered that the restraining provision of this order shall take effect with regard to shipments presently detained by the Collector of Customs upon plaintiff's filing in Court a bond and undertaking of like amount as posited by defendant with the Collector of Customs under 19 C.F.R. § 11.20 (c).

With regard to shipments received hereafter, if any, and during the period of the restraining order, the restraining provision shall take effect only upon filing a bond or undertaking in an amount calculated to hold defendant Consolidated harmless for any loss or damage resulting therefrom.

Leave is granted to any party, on notice, to make appropriate application with respect to the adequacy of a bond or undertaking filed in pursuance hereto.

(3) It is also ordered that until further Court notice plaintiff is hereby directed to maintain and keep readily accessible records as to the distribution of items subject to the restraining provision of this order. The records shall show to

whom these articles were sent, the costs and sales prices, and any other appropriate information, so that damages can be readily ascertainable in the event defendant ultimately succeeds.

The parties are to proceed expeditiously and take all possible steps to speedily bring this cause on for trial.

This shall be considered an order; settlement thereof is unnecessary.