PRESTIGE FLORAL, SOCIETE ANONYME, Plaintiff,

v.

ZUNINO-ALTMAN, INC., Defendant.

United States District Court
S. D. New York.
Jan. 22, 1962.

Kane, Dalsimer & Kane, New York City, for plaintiff.

Daniel L. Morris, New York City, for defendant.

LEVET, District Judge.

This is a motion by plaintiff, Prestige Floral, Societe Anonyme ("Prestige") for a preliminary injunction. The defendant, Zunino-Altman, Inc. ("Zunino") has moved to vacate the ex parte temporary restraining order granted by Judge MacMahon on November 3, 1961.

The motions under consideration here arise from an action commenced by the plaintiff on November 3, 1961. The complaint in this action alleges an infringement of a copyright under 17 U.S.C. § 101 and jurisdiction of this court is invoked under 28 U.S.C. §§ 1338 and 1400. The plaintiff seeks a permanent injunction, damages and other relief.

The plaintiff is a French corporation engaged in the manufacture and design of molded polyethylene flowers. The plaintiff employs and commissions designers of new and original designs of sculptured artificial flowers. In this manner plaintiff is the author and proprietor of an allegedly original work of art of a sculptured dahlia. This dahlia is covered by Copyright Registration Gp 26063, Class "G," published June 14, 1960 and entitled "Cactus Dahlia."

The defendant Zunino is allegedly a New York corporation having an office and place of business in New York. It is engaged in the business of importing and selling artificial flowers, plants, etc., including those made of polyethylene. One Isidor Abrams, a vice-president of defendant corporation states in an affidavit that on one of his quarter yearly visits to Hong Kong beginning March 1, 1961 he visited Glenplas Industrial Co., Ltd., of Hong Kong, a manufacturer of polyethylene artificial flowers, and that Mr. Shek, the managing director and designer, and others exhibited over 200 designs of artificial polyethylene flowers and sprays. Shek is said to have represented himself as the designer and creator of the flowers shown, including the cactus dahlia (Plaintiff's Ex. 3), which is alleged to be a copy of the plaintiff's cactus dahlia (Plaintiff's Ex. 2) and thus infringe plaintiff's copyright. Mr. Abrams further states that he told Shek that defendant would place orders for flowers for its fall line provided Shek would guarantee that the designs had not been published and that the copyright rights would be assigned to defendant. Subsequently, beginning March 22, 1961, and from time to time thereafter, defendant placed orders for the more than 200 designs Abrams selected from the Glenplas line. It may be noted that there is no express statement by Abrams that Shek did give the requested guarantee and no affidavit of Shek has been submitted by defendant. However, the guarantee may be inferred from the fact that defendant subsequently placed orders with Shek. Counsel for defendant explained upon oral argument that Shek traveled extensively and could not be located at the present time.

The plaintiff by means of affidavits and by deposition of its distributor, Paulsen, indicates that it will suffer irreparable injury unless the preliminary injunction is granted. Paulsen's deposition asserts that defendant's reproduction (1) is of inferior workmanship; (2) makes use of inferior color pigments; (3) detracts from the aesthetic beauty and appearance of plaintiff's creation; (4) sells for a lower price than plaintiff's reproduction; (5) has a detrimental effect upon the reputation of the plaintiff's designer, Mr. Fristot, as a flower creator; and (6) gives a misleading impression and creates confusion in the minds of prospective customers. The result is a loss of customers and sales to plaintiff.

■ The general rule is that a preliminary injunction will issue upon a prima facie showing by plaintiff that it is the possessor of a valid copyright and that defendant has infringed. Houghton Mifflin Company v. Stackpole Sons, Inc., 2 Cir., 1939, 104 F.2d 306, 397, cert. denied, 1939, 308 U.S. 597, 60 S.Ct. 131, 84 L.Ed. 499; H. M. Kolbe Co. v. Armgus Textile Co., 2 Cir., 1960, 279 F.2d 555; Trifari, Krussman & Fishel, Inc. v. Charel Co., D.C.S.D.N.Y., 1955, 134 F. Supp. 551, 554.

At the outset it may be noted that the defendant challenges the validity of plaintiff's copyright in several respects. I find it unnecessary to reach the question of validity of plaintiff's copyright since I do not find that the defendant infringed the plaintiff's copyright.

■ There is nothing novel in reproducing flowers in polyethylene and the plaintiff does not here urge that its copyright prohibits the defendant from reproducing dahlias. It is the eminently logical view, and one which is not in dispute herein, that a copyright does not protect the dahlia itself but merely the creator's impression, treatment, or reproduction of the object copyrighted. Judge Feinberg in Prestige Floral Societe Anonyme et al. v. California Artificial Flower Co., D.C.S.D.N.Y., 1962, 201 F.Supp. 287, at page 291 of the opinion, stated:

" * * * [I]t would seem that though a flower, like a dog, is a creation of nature, a *likeness* of it may be copyrighted."

The same view was expressed by the Court of Appeals for the First Circuit in F. W. Woolworth Co. v. Contemporary Arts, 1 Cir., 1951, 193 F.2d 162, aff'd, 1952, 344 U.S. 228, 73 S.Ct. 222, 97 L. Ed. 276, where it was stated:

"It is the well established rule that a copyright on a work of art does not protect a subject, but only the treatment of a subject. * * * The proposition was elaborated by Mr. Justice Holmes in Bleistein v.

Donaldson Lithographing Co., 1903, 188 U.S. 239, 249, 250, 23 S.Ct. 298, 299, 47 L.Ed. 460, wherein with respect to cromolithographs of a circus scene prepared for advertising purposes he said: 'But even if they had been drawn from the life, that fact would not deprive them of protection. The opposite proposition would mean that a portrait by Velasquez or Whistler was common property because others might try their hand on the same face. *Others are free to copy the original. They are not free to copy the copy.* * * * * '" (Emphasis added.) (193 F.2d at 164.)

In F. W. Woolworth, supra, the court found upon visual observation of the plaintiff's and defendant's statuettes that the only difference between the two was that the latter was represented as having long hair on the body and neck and that the difference was unimportant and did not controvert the allegation of copying. The court observed:

" * * * What is highly, if not conclusively, significant of copying is the fact that the plaintiff's and the defendant's statuettes are identical in proportion, and so far as we can see with inexpert eyes in conformation, and furthermore the configuration of the curls and folds of the long hair represented on the under body and the feathering represented on the legs of the plaintiff's statuette are shown as asymmetrical, and the defendant's statuette shows the identical lack of symmetry in these respects. Thus there is ample evidence that one model was copied from the other. * * * " 193 F.2d at 166.

Visual observation of the plaintiff's dahlia and the defendant's dahlia indicate certain readily apparent differences. The defendant's dahlia has petals arranged in a ragged design and these petals face in an upward direction. The plaintiff's dahlia has petals which are arranged in a "star-like" evenly-spaced

pattern and these petals face in an outward direction. These differences standing alone appear to result in significantly different aesthetic effects. There are, however, other peculiar differences between the two flowers, as follows:

| Plaintiff's Dahlia (Plaintiff's Ex. 2)[1] | Defendant's Dahlia (Plaintiff's Ex. 3) |
|---|---|
| 1. The stem has longitudinal ridges from end to end and is smaller. | The stem is smooth and is larger. |
| 2. The stem is light green in color.[2] | The stem is dark green in color.[2] |
| 3. The upper end of the stem is bent and bloom faces outwardly. | The upper end of the stem is bent more slightly and bloom faces upwardly. |
| 4. The stem carries *one* set of three leaves and *one* set of five leaves. | The stem carries *two* sets of three leaves each and *no* five-leaf set. |
| 5. The leaves are a light grayish green in color.[2] | The leaves are a dark green in color.[2] |
| 6. The upper set of leaves is arranged close up to the bloom. | The upper set of leaves is spaced from the bloom. |
| 7. The calyx is light green in color[2] and is translucent. | The calyx is a dark green in color[2] and is opaque. |
| 8. The calyx petals extend outwardly and resemble the natural calyx. | The calyx petals extend downwardly in cup-shape and are conventionalized, i. e., do not resemble the natural calyx. |
| 9. The calyx is connected to an epicalyx of the same color as the calyx and resembles the natural epicalyx. | There is no epicalyx. |
| 10. The color of the bloom is predominantly red. | The color of the bloom is predominantly orange. |

———————◆———————

1. The court has examined the original reproduction of the dahlia filed by plaintiff at the Copyright Office, Library of Congress, Washington, D. C. and notes certain differences between this reproduction and Plaintiff's Exhibit 2. The leaf arrangement on Copyright Office reproduction, for example, is composed of *two* five-leaf sets and *one* three-leaf set. This is even more different from the defendant's reproduction than Plaintiff's Exhibit 2 and consequently use of the latter reproduction for comparison purposes appears to be sufficient. Counsel for both parties agree that Plaintiff's Exhibit 2 and Plaintiff's Exhibit 3 are examples of the plaintiff's and defendant's respective reproductions.

2. It is not, of course, submitted that the copying of color constitutes an infringement, but the variance in color is but another factor contributing to the difference in aesthetic effect conveyed by the two reproductions.

It is arguable that none of these differences when taken alone would be conclusive in establishing that there has been no copying. However, when taken together the result is that the plaintiff's dahlia and the defendant's dahlia create different impressions on the court in its role as an inexpert observer. This impression, however, is buttressed by the deposition of Donald A. Paulsen, a director of D. Arnold Associates, Inc., the sole and exclusive distributor of the plaintiff's dahlia and other reproductions in the United States. Mr. Paulsen in referring to plaintiff's reproduction stated:

"It's, in a sense, a true reproduction. Everybody would recognize it as being a cactus dahlia, close to what the cactus dahlia looks like in nature. There is a certain amount of stylizing which is done by the creator of the item, and not only as regards the appearance, but concerning the way in which he has placed the petals to allow for the construction of the flower so that when the finished unit is assembled it gives a very aesthetic—a very artistic and interesting—presentation." (Paulsen, Deposition, pp. 9–10.)

Mr. Paulsen, upon being questioned as to the meaning of "aesthetic appearance," stated:

"I gave you a bit of an illustration about how I put out the samples on my dining room floor at home, and the way they pleased me in looking at them. They have a certain beauty which causes me almost to lose my breath or become a little bit excited about the styling and the colors, whereas in the case of the Hong Kong reproduction here, I don't find it so.

"Q. That is defendant's flower?

"A. Defendant's flower, and I am holding Exhibit O [Pl. Ex. 3]. I find that while trying to arrive at the same intangible beauty, because of this inferior workmanship of the flashing, they have considerably dirtied the appearance or taken somewhat from this nice neat beauty of the original creation." (Paulsen, Deposition, p. 91.)

Paulsen discussed his customers, whom he described as "extremely keen to the differences in the flowers, almost to the extent of being expert," as follows:

"Therefore, in scrutinizing the defendant's cactus dahlia and our dahlia, and providing the labels of country of origin do not exist in scrutiny, they could tell the difference, and they would recognize that defendant's was a knock-off of the original creation." (Paulsen, Deposition, p. 96.)

Although the word "knock-off" may be construed to mean "copy," Paulsen's statements clearly establish that persons familiar with the artificial flower business would agree with the observation of the court that differences are readily apparent between the two flowers.

It cannot be, and, indeed, it is not, advanced that the defendant's dahlia is not similar to the plaintiff's dahlia. In the final analysis, in order to sell a reproduction as a dahlia it must resemble the natural flower as it exists in its natural state.

■■ The fact that plaintiff asserts that defendant's dahlia is causing it to lose customers and sales cannot be determinative of the issues here. Any competitive product will normally have some effect on the sales of others and, as indicated above, a copyright on a reproduction of a natural object does not foreclose others from copying that natural object also. In point of fact, both sides concede that defendant's reproduction is inferior to plaintiff's in many respects and, therefore, competition between the products insofar as quality is concerned is non-existent.

■ I cannot find on the basis of the affidavits, exhibits, and oral argument presented that plaintiff has made the prima facie showing of infringement necessary for the granting of a preliminary injunction.

In view of the foregoing, defendant's motion to vacate the temporary restraining order is granted and plaintiff's motion for a temporary injunction is denied.

This opinion contains the Findings of Fact and Conclusions of Law required by Rule 52 of the Federal Rules of Civil Procedure, 28 U.S.C.

Settle order on notice on or before January 29, 1962.