**RICO, LTD., and Rico International, Ltd., Plaintiffs,**

v.

**HUB FLORAL MFG. CO., Defendant.**

United States District Court
S. D. New York.
June 18, 1962.

Alan Latman, Cowan, Liebowitz & Latman, New York City, for Rico Ltd. and Rico Internationale, Ltd., plaintiffs.

Daniel L. Morris, Curtis, Morris & Safford, New York City, for Hub Floral Mfg. Co., defendant.

RYAN, District Judge.

Plaintiffs, Hong Kong corporations, seek to enjoin defendant from importing and selling plastic flowers and foliage which allegedly infringe plaintiffs' copyright. The particular articles in suit are a spray of Chinese aster and a sprig of boxwood.

Plaintiff, Rico Ltd., manufactures sculptured, artificial polyethylene flowers for resale by Rico, International, Ltd., its selling organization. The flowers are made in Hong Kong in a factory owned by plaintiff Rico, Ltd., from molds which it makes, owns and keeps there. The flowers are made by injecting polyethylene plastic into these plaster, brass and steel cast molds. The design is first sculptured in clay by an artist.

Plaintiffs' business is run on an exclusive distributor basis, i. e., its customers are distributors who purchase plaintiffs' flowers on a letter of credit basis to plaintiffs' company in Hong Kong relying on the quality, originality and copyright of plaintiffs' goods. Defendant, a family partnership organized under the laws of Massachusetts, has been importing and selling artificial flowers and shrubs throughout the United States since 1923; it maintains a studio in Massachusetts and display or showroom facilities in New York. Since 1941 it has been purchasing

and importing items from Hong Kong. Apparently, it enjoys an excellent Dun & Bradstreet credit rating.

Plaintiffs allege, and we take the following as established for the purposes of this motion: a valid copyright was procured and published on February 17, 1961 on the two items in suit as a "three dimensional work of art" entitled respectively "Floral Creation: artificial boxwood 12″ high" and "artificial Chinese Aster 16″ high" (17 U.S.C. § 13, 202.16 Regs. C.O.). Distribution of the two copyrighted items began in 1961 and gave promise of commercial success. In the winter of 1962 plaintiffs learned that defendant in its catalogue was offering articles of the same species as these two items, that is, the spray of Chinese aster and sprig of boxwood. Plaintiffs obtained copies and filed this suit, alleging that both of defendant's items, while produced with some slight differences, are a piratical copy. The only differences admitted by plaintiffs are a slightly deeper rose color in defendant's aster and a single stem of boxwood rather than two main stems as in plaintiffs. Plaintiffs maintain, however, that in spite of these differences, there is an unlawful copying which infringes plaintiffs' copyright and has resulted in damage to their reputation and business by reason of the fact that their exclusive franchise customers are complaining not only of the sales of defendant's items, which rob plaintiffs' of exclusivity, but of the fact that defendant's are sold more cheaply. While plaintiffs do not urge that defendant made actual copies of plaintiffs' molds or had access to them, they do urge that defendant is copying plaintiffs' designs, i. e., pirating plaintiffs' work as a model for its items.

On the basis of these allegations and a complaint charging infringement and unfair competition, plaintiffs obtained a temporary restraining order which defendant now seeks to vacate. No evidence of unfair competition has been presented in support of this motion.

Defendant denies under oath that it knew of plaintiffs' copyrighted works until the filing of the instant suit. Two partners have stated by affidavit that in following the general practice of the partnership, they went to Hong Kong where, from among various manufacturers' samples of numberless flowers and shrubs, they selected the Chinese aster and boxwood samples; that this was an over-the-counter purchase from molds which presumably had already been made, which defendant took no part in designing or making and for which it did not pay; that at the same time it purchased 26 other polyethylene flowers and shrubs, all of which, including the aster and boxwood, it listed in its 1962 catalogue for its customers; that at the time it purchased 500 gross and later an additional 700 gross of boxwood solely for the partnership; that defendant had as early as 1960 offered a different spray of aster and that it had purchased the accused spray because of the popularity of this item.

We assume but do not determine (1) that the boxwood and aster in evidence are identical to the models for the photographs on which the copyright issued;[1] (2) that they are copyrightable items. Certainly looking at them, they appear to present some evidence of originality of form, contour, configuration and to be the product of artistic skill and judgment. Prestige Floral Societe Anonyme v. California Artificial Flower Co., D.C., 201 F.Supp. 287.

The photographs of the works which were deposited in the copyright office and the commercial sprays attached to the

---

1. Chinese Aster, Exh. 3, does not seem to be identical with the photograph of the Chinese Aster deposited for copyright, particularly with respect to the top blossom and leaf behind it and the leaf on the lefthand blossom. An affidavit of plaintiffs' office manager states that he submitted to counsel for plaintiffs samples which were identical with those photographed and that since there was only boxwood and one Chinese aster designed, all samples are identical. Because of our determination, this need not detain us.

complaint as exhibits, which are before the Court, disclose plaintiffs' works to be:

1 spray of olive green boxwood consisting of a short main stem 3¾" long which separates into two branches: 1 of which continues and extends upward. to form the longest branch on one side and, in addition, carries 5 shorter subbranches; the other of which continues and extends upward to form the longest branch on that side and, in addition, carries 7 shorter subbranches; about half-way up each of these subbranches are 8 clusters of leaves; a similar cluster is also found about two inches from the top of the two original branches. Four of the clusters on the tallest branches are a lighter green color than the lower clusters; the clusters are formed by groups of three leaves which are attached to each other and to the subbranches by means of a cylindrical collar which holds the leaves together at their base and is slipped over the branch by what is known as a "slip on sleeve". The overall appearance of the spray by reason of the division of the main stem into two branches and the fact that the foliage does not start at their base, is that of a fan—open and spread out at the bottom and becoming thicker at the tips.

Defendant's spray of boxwood appears to us to differ in the following respects: it has only one long main stem about 6½" long, twice the length of that of plaintiffs, without main branches but with only 6 subbranches and a seventh formed by an extension of the stem; the clusters of leaves begin at the base in the lower branches but higher on the upper branches, giving the effect of that of a plume in that it is thick at the bottom and thinner at the top, tapering off gradually. In addition, there are differences of detail, such as the color, which incidentally is a lighter green than in plaintiffs'. The similarities are that both are sprays of boxwood; that the clusters of leaves are composed of three leaves attached to each other and to the branch by the same type of collar or "slip-on-sleeve".

The similarities in appearance between plaintiffs' and defendant's Chinese Aster seem to be more marked than in the boxwood, and yet there is a striking and noticeable difference by reason of the fact that the entire spray—flowers and leaves—of plaintiffs are of a lighter pink and green than defendant's and that the flower in plaintiffs' spray presents a flat shallow saucerlike appearance while that of defendant a cupped or tuliplike shape. In addition, plaintiffs' flower has shadings of pink while defendant's has but one deeper shade. While both have a main stem of equal length and thickness, which goes off at the same point in two branches also equally long and thick, the leaves in plaintiffs' spray are narrower and more glossy than in defendant's and of varying size and configuration, while defendant's are of the same size; in addition, defendant's spray has two new growth leaves at the base of each of the larger leaves; the total appearance of defendant's spray is that the leaves are fuller and larger by reason of the fact that they are not set at such an angle as plaintiffs'. The manner of securing the leaves to the stem and to each other in the boxwood by means of a "collar" or "slip-on-sleeve" and in both items by means of a "sleeve and peg arrangement", although claimed by plaintiffs to be their creation, is said by defendant to have been used by it and others in 1959 and 1960 in two other items, prior to the copyright claimed by plaintiffs, and to be therefore public property. In addition, plaintiffs' aster is held in place by an eyelet, which defendant claims to have used prior to plaintiffs' copyright while defendant's aster is slipped on the stem and fastened with a button.

There is no evidence and plaintiffs do not urge that defendant's articles are actual copies made from plaintiffs' own molds; or from defendant's mold copied from plaintiffs' molds. In fact, the evidence is to the contrary since plaintiffs swear that they kept the molds hidden in their factory in Hong Kong under constant guard. The evidence is uncontradicted that defendant neither knew, nor

saw, nor heard of plaintiffs' copyright until it was sued herein. Although plaintiffs claim that they registered and filed samples of their copyrighted asters and boxwood with all customs officers throughout the country about May 1, 1961, it does not appear that defendant was aware of this since none of its items purchased or imported many months later were held up by customs.

The question then is whether the articles are so substantially similar to each other as to almost compel the conclusion that defendant's item is not the product of its own independent artistry, skill and judgment, but must rather be the result of a conscious copying and appropriation of plaintiffs' design.

We have carefully examined the plaintiffs' flowers and boxwood and compared them side by side with defendant's accused items and we conclude that their overall appearance, resulting from variation of detail of leaf and flower design, placement, color and angle, is not so similar as to warrant a finding that plaintiffs would ultimately succeed in establishing that defendant copied their copyrighted articles. And this would be so to the casual observer who might normally overlook the disparity of detail which as we have pointed out appears to be substantial. Peter Pan Fabrics Inc. v. Martin Weiner Corp., 2 Cir., 274 F.2d 487. Naturally, there are essential basic similarities of form, size, composition and coloring since after all the copyrighted and accused products are copies of living flowers and leaves, but the similarities are not "so numerous and substantial as to give rise to a strong inference of copying." Joshua Meier Co. v. Albany Novelty Mfg. Co., 236 F.2d 144 (2d Cir., 1956); Prestige Floral, Societe Anonyme v. Zunino-Altman, Inc., 203 F.Supp. 649 (1962 S.D.N.Y.), aff'd p.c. Poyner v. C. I. R., 4 Cir., 301 F.2d 287 (1962); but see Prestige Floral, Societe Anonyme v. California Artificial Flower Co., 201 F. Supp. 287 (1962 S.D.N.Y.).

The preliminary injunction is denied; defendant's motion to vacate the restraining order is granted. So ordered.