A. J. FRISTOT and D. Arnold Associates, Inc., Plaintiffs,

v.

FIRST AMERICAN NATURAL FERNS COMPANY, a partnership composed of Samuel S. Berger, Gertrude Berger Lowell, Rose Berger Steindler and Anna Berger, and First American Artificial Flowers, Inc., Defendants.

No. 66 Civ. 746.

United States District Court
S. D. New York.
March 29, 1966.

Kane, Dalsimer, Kane & Smith, New York City, for plaintiffs. Philip T. Dalsimer, David H. T. Kane, New York City, of counsel.

Irving Nitzberg, New York City, for defendants. Michael Nitsberg, New York City, of counsel.

FRANKEL, District Judge.

Suing under 17 U.S.C. § 101, with the court's jurisdiction rested upon 17 U.S.C. § 112 and 28 U.S.C. § 1338, plaintiffs have moved for a preliminary injunction against defendants' alleged infringement of a copyright on an "original work of art in the form of a sculptured representation of a Rhododendron flower." In addition to the copyrighted work, the allegedly infringing product, and affidavits, we have had the benefit of a hearing at which the parties presented oral testimony and exhibits. We reach the following findings of fact and conclusions of law.

I.

Plaintiff Fristot, a citizen and resident of France, has been engaged for some time in the creation and sale of plastic artificial flowers. From time to time he has obtained copyright registrations for such products, including Registration No. GF 218, Class G, for the rhododendron (classified in the Copyright Office as "Sculpture") involved here.

Plaintiff D. Arnold Associates, Inc., a New York corporation, is Fristot's exclusive distributor in the United States.

The defendants are, and for many years have been, engaged in the business of importing and selling artificial flowers, maintaining a showroom in Harrison, New York. Defendant Samuel S. Berger, president of the corporation since 1933, has personal charge of overseas purchases.

In March of 1965, on one of his three or four annual buying trips abroad, Berger selected some 150 styles of artificial flowers produced and sold by Hong Kong Plastic Mfg. in Kowloon. One item in the order he placed was 160 gross of the rhododendron of which plaintiffs complain. Receipt and sale of these rhododendrons by the defendants began in

June of 1965.[1] They have sold slightly more than half the quantity ordered for a total of something short of $5,000.

The current weeks, just before Easter, are a peak season for the sale of artificial flowers. The accused rhododendron, priced substantially lower, competes with plaintiffs'. Plaintiffs' sales have declined markedly since the Hong Kong flower has appeared in this country.

## II.

The single issue seriously tendered by defendants is whether plaintiffs have proved their charge of copying sufficiently to make out a prima facie case of infringement and justify the preliminary relief sought on this motion.[2] Accordingly, we have studied the polyethylene flora in evidence, together with the parties' aesthetic, metric, and horticultural contentions about them. Thus enlightened, we find plaintiffs' contentions to be vividly demonstrated.

Both flowers consist basically of (1) a stem about 23 inches long, (2) clusters of petals or blooms (or "fleurettes," as plaintiffs say), and (3) groups of six-leaf and eight-leaf clusters. The most striking identities are in the latter two categories.

The petals, as we shall call them, are all in the shape of flared cups, with wavy circumferences and ripples, designed to simulate the random artistry of nature. In each flower the cluster of such petals is comprised of two groups, the members of each group being all alike, so that there are in each cluster just two kinds, one larger than the other.

Plaintiffs showed that each of defendants' two petals fits neatly into the corresponding one of plaintiffs, nestling comfortably into every depression, rising with every rise, etc. Moreover, the undersides of defendants' petals follow minutely the contours of the insides of plaintiffs'. This is compelling evidence that the Hong Kong manufacturer used plaintiffs' earlier creation to make a mold for its petals.

Similar identities are revealed in the leaf clusters. Like plaintiffs' work, defendants' has two varieties of these, one with six leaves, the other with eight, fanning out in a circle from a central stem. Around each circle, the leaves vary in size and shape. Defendants' leaves follow exactly these variations in plaintiffs', a coincidence dramatically at odds with the hypothesis that both manufacturers independently copied from among the myriad variety of such patterns to be found growing naturally.

Moreover, the leaves of defendants' rhododendron, like its petals, fit snugly into plaintiffs', following with nearly microscopic exactness the pattern of veins and other contours. For example, one leaf in one of plaintiffs' clusters has an odd depression about three-eighths of an inch in diameter. Defendants' corresponding leaf is an exact duplicate. As in the case of the petals, the insides of plaintiffs' and the undersides of defendants' leaves correspond like mirror images, leading almost irresistibly to an inference that the Hong Kong mold was built from plaintiffs' creation.

There are other close similarities—in stem arrangements, stamens, buds, and

---

1. The Hong Kong manufacturer, following a visit and complaint from an officer of plaintiff D. Arnold Associates in December 1965, adopted a hands-off attitude toward American copyright troubles. In a step which is a matter of incidental interest rather than legal significance, it proceeded to affix to its sample rhododendrons for shipment to this country a tag saying, *inter alia:* "As we do not wish either of us involved of a COPYRIGHT trouble, so we endeavor to rush you an item in new stem. * * * We DO NOT RESPONSIBLE for any copyright in the United States."

2. Defendants' papers contain a fleeting intimation that the copyright could be questioned, but the thought has been neither briefed nor argued orally. There is no occasion to reconsider the carefully reasoned decision of Judge Feinberg in Prestige Floral, S.A. v. California Artificial Flower Co., 201 F.Supp. 287, 288–291 (S.D.N.Y.1962), upholding a copyright like the one here.

construction techniques. There are differences, too, and defendants urge that the list of distinguishing features is so long as to refute the claim of copying. The petals are differently colored. The leaves are different shades of green. Plaintiffs' weighs more, in part because its plastic construction is thicker. There are nine petals and six leaf clusters on defendants'; these numbers are, respectively, twelve and seven on the copyrighted flower. The stem of defendants' flower has more burrs and is glossier.

■ This is not a short catalogue of differences. It is enough, obviously to render the two flowers by no means identical in overall appearance. But, equally obviously, the distinguishing characteristics are wholly insufficient to conceal the substantial copying that adds up to infringement. Cf. F. W. Woolworth Co. v. Contemporary Arts, 193 F.2d 162, 164 (1st Cir. 1951), aff'd on other grounds, 344 U.S. 228, 73 S.Ct. 222, 97 L.Ed. 276 (1952); Joshua Meier Company v. Albany Novelty Mfg. Co., 236 F.2d 144, 146 (2d Cir. 1956); College Entrance Book Co. v. Amsco Book Co., 119 F.2d 874, 876 (2d Cir. 1941). Nor is it necessary to say, though it might well be said, that such nonessential deviations appear to be the kind of "studied effort to make minor distinctions" which is "itself evidence of copying." Scarves by Vera, Inc. v. United Merchants, etc., 173 F.Supp. 625, 627 (S.D.N.Y.1959). It is enough that the points of remarkable identity cover the central features of both works, amply establishing the kind of "substantial and unfair use" the law forbids. Comptone Company v. Rayex Corporation, 251 F.2d 487, 488 (2d Cir. 1958); Davis v. DuPont de Nemours & Co., 240 F.Supp. 612, 617 (S.D.N.Y.1965).

■ The parties have argued back and forth from the three cases comprising this court's reported jurisprudence on infringements of copyrighted artificial flowers. Two, invoked by defendants, found no infringement. Prestige Floral, S. A. v. Zunino-Altman, Inc., 203 F.Supp. 649 (S.D.N.Y.1962), aff'd, 301 F.2d 286 (2d Cir. 1962); Rico, Ltd. v. Hub Floral Mfg. Co., 206 F.Supp. 192 (S.D.N.Y.1962). One, more impressive to plaintiffs, went the other way. Prestige Floral, S. A. v. Calif. Artificial Flower Co., 201 F.Supp. 287 (S.D.N.Y. 1962). These earlier explorations have been helpful to us, but the essentially factual question whether one work copies another is not soluble by matching precedents. See Peter Pan Fabrics v. Martin Weiner Corp., 274 F.2d 487, 489 (2d Cir. 1960). Defendants are plainly mistaken, we think, in their mechanically quantitative thesis that they should prevail here because they have compiled as long, or longer, a list of differences between the two flowers than those shown by the successful defendants in the Zunino-Altman and Hub Floral cases. There are differences and differences. Here, we conclude, the overwhelming weight is on the side of the sharp and central similarities. See F. W. Woolworth Co. v. Contemporary Arts, 193 F.2d 162, 164, 165–166 (1st Cir. 1951), aff'd on other grounds, 344 U.S. 228, 73 S.Ct. 222, 97 L.Ed. 276 (1952); Prestige Floral, S. A. v. Calif. Artificial Flower Co., 201 F. Supp. 287, 293 (S.D.N.Y.1962); Scarves by Vera, Inc. v. United Merchants, etc., 173 F.Supp. 625, 627 (S.D.N.Y.1959).

Plaintiffs are entitled to a preliminary injunction against the distribution and sale of what has been shown, at least to the extent of an ample prima facie case, to be an infringing product. Defendants are entitled to the posting of security in the amount of $5,000.

Settle order on notice for submission on April 1, 1966.