**FIRST AMERICAN ARTIFICIAL FLOW-ERS, INC. and Samuel S. Berger, Plaintiffs,**

v.

**JOSEPH MARKOVITS INC., Defendant.**

**No. 71–Civ. 5379.**

United States District Court,
S. D. New York.
March 24, 1972.

Helfat & Helfat, New York City, for plaintiffs; by Bernard A. Helfat, New York City, of counsel.

Abeles & Clark, New York City, for defendant; by John S. Clark, New York City, of counsel.

CROAKE, District Judge.

## OPINION

This is a copyright and unfair competition action wherein plaintiffs presently seek to preliminarily enjoin defendant from continuing to infringe its copyrighted work (Copyright No. Gp 55248). The individual plaintiff is the "author" of the work, the proprietor of the copyright rights therein, and the president of the corporate plaintiff-distributor. The complaint seeks a permanent injunction, $150,000 in damages, an accounting, the impounding and destruction of the accused work, and costs and fees of the action. *See* 17 U.S.C. § 101.

The parties agree that the unfair competition claim is not at issue on this mo-

tion, which therefore presents only copyright questions. *Cf.* Sears, Roebuck & Co. v. Stiffel Co., 376 U.S. 225, 84 S.Ct. 784, 11 L.Ed.2d 661 (1964); Compco Corp. v. Day-Brite Lighting Co., Inc., 376 U.S. 234, 84 S.Ct. 779, 11 L.Ed.2d 669 (1964). Defendant's opposition is based on the twin grounds of invalidity of plaintiff's copyright and independent creation of the uncopyrighted accused work.

■ The only novelty in this case is that the works involved are not literary or artistic works in two dimensions, but rather artificial flowers; more specifically, they are wire and polyethylene plastic sculptured reproductions of tea roses, which sell for about 15 cents each. The copyrightability of "three-dimensional" works such as these cannot be challenged, *see* Prestige Floral, S. A. v. California Artificial Flower Co., 201 F. Supp. 287, 289–291 (S.D.N.Y.1962); *cf.* Mazer v. Stein, 347 U.S. 201, 74 S.Ct. 460, 98 L.Ed. 630 (1954), Puddu v. Buonamici Statutory, Inc., 450 F.2d 401 (2d Cir. 1971), but the effect of the present availability of this protection to such a wide range of "works of art." 17 U.S.C. § 5(g), has been to make each case depend more than ever on its own facts. Peter Pan Fabrics, Inc. v. Martin Weiner Corp., 274 F.2d 487, 489 (2d Cir. 1960).

■ To satisfy its burden on this motion, plaintiffs must first establish the validity of their copyright against various challenges; if this burden is carried, they must then prove infringement, and that the equities favor issuance of a preliminary injunction. It is the opinion of the Court that, while the copyright in question does appear valid, at least on this record, plaintiffs have not made a sufficient showing of infringement.

I

■ Defendant has actually raised four challenges to the validity of plaintiffs' copyright: (1) the inclusion of an improper date in the notice of copyright

rendered that notice ineffective to prevent a dedication to the public domain; (2) the falsity of the individual plaintiff's claim of authorship precludes protection of "his" work; (3) the abandonment of protection for a part of the work throws the entire work into the public domain; and (4) the violation of mandatory procedures by the deposit of an alleged nonconforming copy of the work in connection with the registration of the copyright results in the invalidation of the copyright thus obtained. A possible fifth argument, that the subject of a tea rose is too hackneyed to possess the novelty required for copyrightability, is summarily dismissed as going contrary to the well-recognized law. Thomas Wilson & Co., Inc. v. Irving J. Dorfman Co., Inc., 433 F.2d 409 (2d Cir. 1970), cert. denied, 401 U.S. 977, 91 S. Ct. 1200, 28 L.Ed.2d 326 (1971); see Gardenia Flowers, Inc. v. Joseph Markovits, Inc., 280 F.Supp. 776, 782–783 (S.D.N.Y.1968).

Plaintiffs' rose as presently marketed bears on its stem the copyright legend, "(c) by Samuel S. Berger 1969." The legend on the deposited copies is "(c) by Samuel S. Berger 1967." It is conceded that the date of publication of the work under 17 U.S.C.A. § 26 was May 1, 1967, as is accurately stated in the complaint and in the copyright registration application form, *see* Plaintiffs' Ex. A, 17 U. S.C. § 13.

Plaintiffs' attempt to excuse this error by explaining that their Hong Kong manufacturer of the rose in question, in preparing actual flowers for sale from the molds, unauthorizedly changed the date from "1967" to "1969" in the mistaken belief that the proper date should be the date of manufacture. All copies manufactured since at least 1969 have borne a "1969" date, the date when manufacture began, and the number of copies sold bearing a "1967" date is not apparent on this record. *See* 17 U.S.C. § 21.

■ It is understandable that a foreign national may not be acquainted

**182**

with the details of United States copyright law; but it is equally clear that plaintiffs are generally responsible for the acts of their chosen agents, including their manufacturers, performed in the course of their agency. Therefore, while this excuse, in the absence of contrary evidence, might be sufficient to satisfy their burden of showing lack of scienter, cf. 17 U.S.C. §§ 105, 106, it is not by itself sufficient to remove this situation from the ambit of the Copyright Act and the sanctions envisaged in the statute and the cases for failure for whatever reason to comply with statutory formalities. The first challenge to the validity of the copyright, therefore, presents the question of whether a mistakenly postdated notice is adequate notice under the Act, 17 U.S.C. § 10.

At the threshold, it should be noted that the inclusion of any particular date in the notice of copyright was not statutorily required for a work of this type, since it is not "a printed literary, musical, or dramatic work," 17 U.S.C.A. § 19. The preliminary question, then, is whether publication with a notice of copyright which contains an inaccurate elective addition is nevertheless adequate notice.

There is some authority for the proposition that it is not:

"... if the copyright owner elects to give the date of the copyright, the date given must certainly not be later than the actual date." Basevi v. Edward O'Toole Co., 26 F. Supp. 41, 48 (S.D.N.Y.1939).

However, the works therein involved, catalogs of reproductions of religious paintings, had been considered by the Court to be "books" and consequently to have required inclusion of the date of publication in the notice. 17 U.S.C. § 19. The above-quoted statement was therefore dictum; the Court was merely expressing the desire that whatever information is included in the notice should be accurate. It was not faced with the necessity to consider imposition of sanctions because of a misleading elective insertion. See also Rolland v.

Henry Holt & Co., 152 F.Supp. 167, 168 n. (S.D.N.Y.1957).

The basic policy expressed in the Copyright Act of 1909, as amended, and its predecessor acts is to be found in the Constitution, Article I, Section 8:

"To promote the Progress of Science and useful Arts, by securing for limited Times to Authors and Inventors the exclusive Right to their respective Writings and Discoveries; ..."

The general policy of the statute, then, stated in the broadest of terms, is to afford protection. See Washingtonian Publishing Co. v. Pearson, 306 U.S. 30, 36, 59 S.Ct. 397, 83 L.Ed. 470 (1939); Advisers, Inc. v. Wiesen-Hart, Inc., 238 F.2d 706 (6th Cir. 1956), cert. denied, 353 U.S. 949, 77 S.Ct. 861, 1 L.Ed.2d 885 (1957). This is further evidenced by the statute itself, which contains a "savings clause," 17 U.S.C. § 21, alleviating the consequences of particular omissions, and a provision making a certificate of registration prima facie evidence of the facts stated therein, 17 U.S.C. § 209, thereby simplifying plaintiffs' burdens in many cases. See Tennessee Fabricating Co. v. Moultrie Mfg. Co., 421 F.2d 279 (5th Cir.), cert. denied, 398 U.S. 928, 90 S.Ct. 1819, 26 L.Ed.2d 91 (1970).

In the present action all formalities required by the statute for possession of a valid copyright were accomplished: the notice was prominently displayed, and included all necessary information. This was sufficient to obtain protection in the first instance; the question is really whether the addition of the erroneous date worked a forfeiture of that protection. Applying the basic policy to the facts, it would appear that no forfeiture should eventuate absent the possibility of some prejudice to innocent third parties by reason of the inclusion.

The only possible reliance by any members of the public, including defendant, upon the accuracy of the notice appearing on the copyrighted rose would

be for the purposes of computation of the termination date of the monopoly enjoyed under the statute. There could be no significant prejudice from misreliance upon the "1969" date, since under either date, 1967 or 1969, 23 years of monopoly presently remain, assuming no renewal, 17 U.S.C. § 24; this is alleged without contradiction to be considerably in excess of the useful life of this type of object. Also, for whatever it is worth, anyone sufficiently interested could have obtained a copy of the registration certificate, which would have displayed the proper date of publication, 17 U.S.C. § 209, see Plaintiffs' Exhibit A, or could have observed the deposited copies, which contained the proper notice. (Defendant's Exhibit 1.) Plaintiffs' copyright therefore appears valid against this challenge, notwithstanding the possible contrary inference from the dictum in *Basevi, supra.*

Nevertheless, assuming *arguendo* that the method for compliance with statutory strictures voluntarily assumed is no less rigid, and the sanctions for its violation no less inevitable by reason of the voluntariness of the inclusion, we remain of the opinion that plaintiffs' copyright must at this juncture be held to be valid and enforceable, of course assuming the eventual proof of what are presently mere unsupported allegations.

The leading case on this subject, Baker v. Taylor, 2 Fed.Cas. 478 (No. 782) (C.C.S.D.N.Y.1848), drawing on Wheaton v. Peters, 33 U.S. (8 Pet.) 591, 8 L. Ed. 1055 (1834), established the rule that any variance between the facts and the purported date of publication as stated in the notice of copyright constitutes a failure to comply with the statutory requirements, thereby rendering the notice ineffective. The work will then be deemed dedicated into the public domain, for lack of adequate notice of copyright. *Accord* American Code Co. v. Bensinger, 282 F. 829, 836 (2d Cir. 1922) (dictum), Wrench v. Universal Pictures Co., 104 F.Supp. 374, 378. (S. D.N.Y.1952) (dictum.)

However, the harshness of this doctrine has been mitigated in more recent times: it is now held that substantial compliance with the copyright laws is all that is required in order to insure their protection. Uneeda Doll Co. v. Goldfarb Novelty Co., 373 F.2d 851 (2d Cir. 1967), cert. denied, 389 U.S. 801, 88 S. Ct. 9, 19 L.Ed.2d 56 (1967); see Prestige Floral, S. A. v. California Artificial Flower Co., *supra,* 201 F.Supp. at 292; *cf.* Washingtonian Publishing Co., *supra*; Wrench, *supra,* 104 F.Supp. at 378–379; *see also* Robert Stigwood Group v. Sperber, 457 F.2d 50 (2d Cir. 1972), Kaplan, An Unhurried View of Copyright, 66 Colum.L.R. 831.

■ Similarly, inadvertent predating of the date of publication in a notice of copyright will not work a dedication, absent more, but will only shorten the period of statutory monopoly to that erroneously claimed. American Code Co., *supra,* 282 F. at 836; 37 C.F.R. § 202.2(b) (6) (i).

■ Likewise, it is now the law that minor discrepancies between the actual date of publication and that stated in the registration application form or notice of copyright will not preclude copyright protection, so long as the difference between the dates is less than one year. *Advisers, Inc., supra*; Davis v. E. I. DuPont de Nemours & Co., 240 F. Supp. 612, 623 (S.D.N.Y.1965); Key West Hand Print Fabrics, Inc. v. Serbin, Inc., 244 F.Supp. 287; 269 F.Supp. 605 (D.Fla.1965), aff'd 381 F.2d 735 (5th Cir. 1967); Nimmer, § 85.3.

■ The conclusion must be that the *Baker* case, *supra,* if it be read as requiring rigid adherence to all formalities on pain of forfeiture of statutory protection, is no longer completely accurate as a statement of the law. *See* Washingtonian Publishing Co., *supra,* 306 U.S. at 43, 59 S.Ct. 397 (dissent). This is not to say that substantial compliance with the notice requirements of the statute is all that is now required, but only that, in specific situations, the

allegation of excusable error plus lack of prejudice to others may suffice to avoid the more extreme statutory pitfalls.

It should also be noted that Baker v. Taylor may not be good law today on its facts. It involved postdating of an indeterminable but relatively short period, intentionally but non-maliciously. The case has never been openly disapproved, but has been consistently distinguished because of the intentional element present therein. It could, in fact, be distinguished from the present action on that ground. However, should the same situation arise today as arose in that case, and the error, although intentional, be done in good faith, the result might well be different.

The question then becomes whether there was substantial performance of statutory requirements by plaintiffs; or in other words, whether the two-year variation in dates was material. It is our opinion that it is not a significant deviation for present purposes.

A survey of the cases discloses that most "inadvertent" errors concerning dates have arisen from confusion between dates of printing or manufacture, etc. with dates of publication. Laymen sometimes fail to realize that "publication" is a word of art, and thereby create the problems, sometimes knotty, particularly in the case of three-dimensional works, which have given rise to the reported cases. These errors often involve short periods of time.

"Deliberate" variations, on the other hand, whether or not the intent to mislead exists, frequently involve longer time periods, such as those between successive editions or republications. In these situations, the copyright proprietor has generally made a judgment regarding whether or not a certain change in the work amounts to a new publication. The status of the first publication as such is not in question. In these cases, the courts have determined that such a proprietor proceeds at his peril. However, it is the forfeiture, not the validity ab initio, of the copyright which is in issue.

A third set of cases involve, not defective notices, but defective registration applications. See, e. g., Key West Hand Print Fabrics, Inc., supra, 244 F.Supp. at 291; 269 F.Supp. at 610. Those cases are inapplicable herein, since present plaintiffs' application form is valid, at least for present purposes. See infra.

It therefore appears that, on the present state of the record, this case may be categorized as a "confusion case" rather than a "deliberate variation" or other case. Absent some evidence controverting the bona fides of plaintiffs' Hong Kong agent's "mistake," the error must be held insubstantial, and the copyright nonetheless valid. Plaintiffs have so far carried their burden of establishing validity, and defendants have failed to show any forfeiture. Tennessee Fabricating Co., supra.

Defendant's second challenge to the validity of the copyright rests on its assertion that the rose was not created by the skill, labor and judgment of the individual plaintiff, the purported author, but rather by the Hong Kong manufacturer. Were this the case, the work would be uncopyrightable for lack of originality. E. g., American Code Co., supra, 282 F. at 834.

In response, individual plaintiff states:

"I worked directly with the manufacturing plant. I directed the making of the model rose, I specified the number of leaves, petals and thorns as well as the length of the stem and the arrangement of the components. With my own hands, I formed the ripples in the leaves and the curls in the petals in conformity with which the molds were shaped. I worked out the method for making and assembling "the artificial flower, and I believe that in every sense of the word I created 'TEA SONG ROSE' [plaintiffs'] as I have created dozens of other copyrighted sculptured artificial flowers." (Reply Affidavit, ¶ 3.)

At a minimum, this statement raises a fact issue for trial. Were our opinion as to actual infringement different, its

sufficiency might have to be adjudicated at this time; but in light of the result, all that need be said is that defendants have not as yet overcome the presumption of authorship from proper filing of the registration application. 17 U.S.C. § 209, *supra.*

Defendant's third challenge to the validity of the copyright assumes that it was validly obtained, but argues that subsequent utilization of elements of the protected rose in an uncopyrighted rose published by plaintiffs resulted in an abandonment of their copyright on the entire rose.

The amount of novelty required for a new work to be copyrightable is rather minimal. The plaintiffs' later rose is not uncopyrightable merely because it included elements of an earlier, copyrighted work. *Gardenia Flowers, Inc., supra,* 280 F.Supp. at 782. This being the case, the subsequent publication of the second rose resulted in a dedication of that rose to the public domain, including all its component parts, as plaintiffs concede. The leaves, which are concededly identical with the copyrighted leaves, are therefore abandoned. Defendant also alleges that the two stems are identical; plaintiffs deny this. Resolution of this non-determinative issue can also be left for trial.

However, the first rose remains original, even apart from the contribution made by its leaves. There does not appear to have been any intent to dedicate anything more than was necessarily dedicated to the public domain, and no more should be considered abandoned than the statute requires. But the statute, if anything, supports plaintiffs' position: the second rose could arguably be considered an "adaptation . . . or other version" of the copyrighted rose; were this the case, the protection afforded the copyrighted rose cannot be diminished by any failure to obtain protection for the later version. 17 U.S.C. § 7; *Wrench, supra,* 104 F.Supp. at 378. Nimmer §§ 39, 57–1. Final determination of whether the later rose was actually a "version" of the former is another issue which may safely be left for trial.

Defendant's fourth challenge to the validity of the copyright controverts what has been assumed heretofore, namely, that proper procedures were not followed in obtaining the certificate of copyright. Specifically, defendant alleges that upon examination of the copy deposited with the Copyright Office, significant differences appeared between that rose and those presently being marketed.

However, there is no evidence in the record as to the amount of variation possible or inevitable under the manufacturing technology utilized in the production of either rose. The scope of permissible, "insubstantial" variations in form has not been addressed by the parties; some variation is evidently permissible, for the copyrighted rose appears to have been marketed without objection in both red-budded and yellow-budded versions. The deposited copy, or even a photograph of it, is not before the Court; all that is, is an unsworn statement in letter form by a correspondent of defendant's attorneys. We are therefore loathe to find any error at this time in the deposit of the copy, reserving final determination of this issue, along with the other presently non-determinative fact issues, for trial. See Prestige Floral, S. A. v. Zunino-Altman, Inc., 203 F.Supp. 649, 652 n. 1 (S. D.N.Y.1962), aff'd, 301 F.2d 286 (2d Cir. 1962).

II

Assuming that plaintiffs have established the validity of their copyright, they must next prove that defendants have infringed it. It is apparently impossible in this case, as in most, to establish at this juncture a prima facie case of infringement by proof of actual copying; there has been no extrinsic evidence offered of actual copying, and comparison of the parts of the two roses, albeit without benefit of expert direction, fails to demonstrate that any part of the copyrighted rose was used as

a pattern for the mold for the corresponding part of the accused rose.

Plaintiffs have therefore attempted to infer copying by demonstrating access and substantial similarity. Access is present; plaintiffs' rose was apparently distributed and advertised to the general market before the accused rose was offered for sale. It is also clear that the two roses are similar in appearance. The substantiality of the similarity, however, is hotly contested. The two roses must therefore be compared in light of the relevant test for substantiality, which is,

> "whether an average lay observer would find a substantial similarity in the designs, recognizing the copy as an appropriation of the copyrighted work."

Concord Fabrics, Inc. v. Marcus Bros. Textile Corp., 409 F.2d 1315, 1316 (2d Cir. 1969); *accord* Arnstein v. Porter, 154 F.2d 464 (2d Cir. 1946).

■ Plaintiffs' difficulty in this regard is that any two devices purporting to represent a natural prototype or archetype are likely to be similar, quite apart from any copying. Thus, a copyright on a work which bears practically a photographic likeness to the natural article, as here, is likely to prove a relatively weak copyright. This is not to say that, as a matter of law, infringement of such a copyright cannot be inferred from mere similarity of appearance, but only that the plaintiff's burden will be that much more difficult to sustain because of the intrinsic similarities of the copyrighted and accused works. For example, plaintiffs must prove more than that the general "pattern" of the copyrighted rose was appropriated, since its "pattern" was presumably the natural article itself in one form or another. They must show an appropriation, not merely of the uncopyrightable "idea" of the polyethylene tea rose, but actually of its "expression." See Nichols v. Univer-

sal Pictures Corp., 45 F.2d 119, 121 (2d Cir. 1930), cert. denied, 282 U.S. 902, 51 S.Ct. 216, 75 L.Ed. 795 (1931); McGraw-Hill Inc. v. Worth Publishers, Inc., 335 F.Supp. 415, 420 (S.D.N.Y.1971); cf. Nimmer, § 37.4.

■ Turning to the actual comparison of the copyrighted and accused works, the first, generalized impression is one of similarity. This is understandable, in light of the common natural source which presumably inspired the craftsmen of both roses. However, a closer inspection, more attentive to detail but still no more than could reasonably be expected of a lay observer, reveals a pattern of differences, not of near, or absolute, identity of parts.

Thus, with respect to leaves, both roses possess two topmost leaves composed of three leaflets each; the next lower leaf (defendant's)[1] or leaves (plaintiffs') are composed of five leaflets. (Defendant states that the deposited copy contains "four branches of leaves [leaves] consisting generally [?] of five leaves [leaflets] per [leaf]. One of the [leaves] has two [leaflets]." (Defendant's Ex. 1, *supra*.)) From our experience we note that the rose as it commonly appears in nature contains three leaflets on each of the two leaves closest to each major bud, and five leaflets on all other leaves. With respect to the arrangement of the leaflets on the leaves, the copies of the roses handed up to the Court at argument are therefore similar, but both follow nature. Similarity in this regard is therefore not probative of copying. The arrangement of the leaves on the stems of the two roses is similar, but by no means identical; the placement varies vertically from about one-eighth to approximately three-fourths of an inch. The color and size of the leaflets themselves are noticeably different, as is the arrangement of the lenticels and the distinctiveness of the veins.

Even if the differences between the leaf and leaflet arrangements should be

1. Defendant describes its own rose as containing three leaves; the copies filed with the complaint and handed up to the Court at argument contained four, as did plaintiffs'.

disregarded because of the dedication of plaintiffs' leaves to the public domain, the other parts of the two roses are considerably different. The calyces are entirely different, whether the accused rose is compared with the version of the copyrighted rose handed up at argument or with that on deposit in Washington, D.C., as described by defendant's correspondent. The individual petals comprising the flower buds of the two roses handed up are distinct shades of yellow. Finally, the positioning and shape of the thorns are different.

The total effect of these various differences, none of which is striking in and of itself, is sufficient to individualize the two roses. Their distinctiveness is such as to negate the inference, if any there be in this context, of copying from evidence of similarity alone. Since there is absolutely no evidence of actual copying, the only possible conclusion must be that plaintiffs have failed to carry their burden with respect to proof of infringement. *See* Prestige Floral, S.A. v. Zunino-Altman, *supra*; Rico, Ltd. v. Hub Floral Mfg. Co., 206 F.Supp. 192 (S.D.N.Y.) (1962); compare Prestige Floral, S.A. v. California Artificial Flower Co., *supra*; Fristot v. First American Natural Ferns Co., 251 F. Supp. 886 (S.D.N.Y.1966).

### III

The present motion is for a preliminary injunction. The determination that defendant has not infringed plaintiffs' copyright should suffice to dispose of this motion; but it should also be noted that the various unresolved factual issues regarding the validity of plaintiffs' copyright is further reason for caution, since existence of these questions does affect plaintiffs' ability to demonstrate a strong case on the merits. American Visuals Corp. v. Holland, 219 F.2d 223 (2d Cir. 1955).

It may also be informative to evaluate the equities as they relate to the issuance of a preliminary injunction, should it have been found to be otherwise available. In this regard, it appears that,

"Artificial [flowers] are a seasonable item in greatest demand during the early spring. . . . In November and December most wholesalers will decide which items they will carry during the spring season." *Prestige Floral, supra,* 201 F.Supp. at 289.

In the case at bar plaintiffs sought a temporary restraint of defendant's marketing activities on December 10, 1971. This was already toward what must be assumed, absent contrary evidence, to be the end of their peak season. The restraining order was denied, but the motion for a preliminary injunction was set down for December 14th. However, the nature of defendant's opposition, particularly its challenge to the copyright validity and enforceability, prompted plaintiff to seek an adjournment to the 21st of December, in order to be able to prepare an adequate reply. It is therefore apparent that, by the time the present motion was argued to the undersigned, the urgency of the situation had considerably diminished. An injunction would not affect orders already filled, so its effect on the parties' 1972 season would likely be marginal. Plaintiff, in determining to seek an adjournment, in effect elected to purchase time for the assembling of legal materials in the defense of the copyright—a defense which has so far proven successful—at the expense of a diminution of its equitable arguments based upon the alleged urgency of the situation.

It also appears that the parties discovered the availability of copyright protection for their products only recently and have not bothered to copyright all their products even at the present time, e. g., witness plaintiff's subsequent use of the copyrighted leaves on an uncopyrighted rose, *supra*.

 Therefore, even though no detailed proof of economic harm is necessary in order to justify the granting of a preliminary injunction, Rushton v. Vitale, 218 F.2d 434, 436 (2d Cir. 1955), the proof offered on this motion is insufficient. Plaintiff will not be seriously harmed if the accused rose is allowed

to remain on the market, at least as contrasted with the damage an improvident injunction might do to defendant's good will.

Finally, it should be noted that defendant has alleged, without contradiction, that:

"Markovits is a substantial organization having a net worth in excess of $5,000,000. It owns real estate, including a large factory in New Jersey. It is fully able to respond in damages in this case. Detailed accounting records are maintained, so that the extent of its sales and profits will be available." (Marsh Affidavit, ¶ 9.)

There is consequently no evidence that plaintiff would lack an adequate remedy at law for any infringement by defendant, had such been held proved.

Accordingly, the motion is denied. The foregoing shall constitute the findings of fact and conclusions of law required by Fed.R.Civ.P. 52(a).

So ordered.