**SOPTRA FABRICS CORPORATION,**
**Plaintiff,**

v.

**STAFFORD KNITTING MILLS, INC.,**
**Defendant.**

**No. 73 Civ. 3822.**

United States District Court,
S. D. New York.

Sept. 28, 1973.

Helfat & Helfat by Bernard A. Helfat, New York City, for plaintiff.

Stoll & Stoll by Samuel J. Stoll, Robert S. Stoll, New York City, for defendant.

### MEMORANDUM AND ORDER

KEVIN THOMAS DUFFY, District Judge.

Plaintiff seeks a preliminary and permanent injunction for the alleged infringement by the defendant of plaintiff's copyrighted fabric design No. 5700. With the consent of both parties the hearing for the preliminary injunction and the trial for the permanent injunction were consolidated pursuant to Rule 65(a)(2) of the Federal Rules of Civil Procedure. This opinion constitutes findings of fact and conclusions of law as required by Rule 52(a) of the Federal Rules of Civil Procedure.

In October 1970, the plaintiff purchased an original design from the Rampelberg Studios in Paris, France. The design was put "in repeat" to broaden it so that it would cover the width of a bolt of cloth and the plaintiff used a silk screen process to print the design on cloth. Originally two colors were used in reproducing the design (the white portion of the design is not considered a color since that portion is not touched by a dye in the silk screen process).

Plaintiff submitted the textile design to the Design Protection Bureau of the Textile Distributors Association which in turn submitted it to the United States Copyright Office which issued a copyright. The design as submitted was in two colors. It evolved, however, that plaintiff produced the fabric with the design in three colors. At least eight color combinations were used by plaintiff (brown, black and orange; blue, black and vibrant green; etc.).

The design No. 5700 became a big seller in plaintiff's line and was continued for three seasons.

Among the purchasers of fabric with the No. 5700 design from the plaintiff was Cindy Carol, a dress manufacturer. For some reason the proprietors of Cindy Carol, either because they were unable to get suitable goods from plaintiff or enough of them, contacted a salesman for the defendant about producing similar goods.

Thereafter the defendant's stylist visited the Cindy Carol factory and from there took a piece of plaintiff's No. 5700 to the Victory Design Studios (hereinafter "Victory"). The defendant's stylist requested Oscar Hyman, one of Victory's salesmen, to prepare a design which would be competitive with plaintiff's No. 5700 but which would not infringe on it.

Victory thereupon made the design which was eventually printed on defendant's fabrics and which plaintiff now claims infringes its copyrighted design No. 5700.

After the onset of this litigation the attorney for the defendant arranged to have the defendant's fabric design registered with the Copyright Office. This filing did not take the usual form since the messenger showed the Senior Copyright Examiner both the design No. 5700 and the defendant's fabric. The Copyright Office issued a certificate of registration of a claim to a copyright on defendant's design.

▬▬ However, the issuance of such a certificate is not controlling in this case. The courts have long held that any finding of fact or conclusion of law by the Register of Copyrights is not binding on the courts. See Bailie v. Fisher, 103 U.S.App.D.C. 331, 258 F.2d 425, 426 (1958); Bouve v. Twentieth Century-Fox Film Corp., 74 App.D.C. 271, 122 F.2d 51 (1941); Gardenia Flowers, Inc. v. Joseph Markovits, Inc., 280 F.Supp. 776, 781 (S.D.N.Y.1968). See also 1 M. Nimmer, Nimmer on Copyright § 95, at 358–59 (1972).

In addition to this policy of favoring judicial review, a study of the administrative procedures of the Copyright Office also reveals the non-determinative nature of a granting of a certificate of registration. As set forth in the official Rules and Regulations, the Copyright Office

"does not undertake the making of comparisons of copyright deposits to determine similarity between works, nor does it give legal opinions or advice on such matters as:

(i) The validity or status of any copyright other than the facts shown in the records of the Office;

(ii) The rights of persons, whether in connection with cases of alleged copyright infringement, contracts between authors and publishers or other matter of a similar nature . . . ."

37 C.F.R. § 201.2 (1973).

▬ Having thus established that I must make a totally independent finding as to the similarities or dissimilarities of the contested designs, it is necessary to set forth the standards on which such a decision must rest. In cases of this type, there has emerged what is called the "ordinary observer" or "lay audience" test, that is, whether an average lay observer would recognize the alleged copy as having been appropriated from the copyrighted work. See, e. g., Concord Fabrics, Inc. v. Marcus Bros. Textile Corp., 409 F.2d 1315, 1316 (2d Cir. 1969); Ideal Toy Corp. v. Fab-Lu Ltd., 360 F.2d 1021 (2d Cir. 1966). See also 2 M. Nimmer, Nimmer on Copyright § 143.5, at 634–43 (1972).

While such a test is easy to state, its application is often difficult. And, as Judge Learned Hand has stated, "[i]n the case of designs, which are addressed to the aesthetic sensibilities of an observer, the test is, if possible, even more intangible." Peter Pan Fabrics, Inc. v. Martin Weiner Corp., 274 F.2d 487, 489 (2d Cir. 1960).

Commenting on the difficulty of determining whether or not a copyright on a fabric design has been infringed, Judge Frankel has most aptly said: "Good eyes and common sense may be as useful as deep study of reported and unreported cases, which themselves are tied to highly particularized facts." Couleur International Ltd. v. Opulent Fabrics Inc., 330 F.Supp. 152, 153 (S.D. N.Y.1971).

Having thus determined the appropriate, albeit vague, standard under which this case is to be decided, it is necessary to turn to a more detailed examination of the contested designs. Both parties have submitted their designs in a blue, black and vibrant green color combination. Though the colors used by both parties are very similar and somewhat unusual, it is not the colors which must be compared but the underlying design.

Plaintiff manufactures the same design in many different color combinations but obtained a copyright on only one. Plaintiff admits that the reason a copyright was obtained on only one color combination is that the copyright is intended to protect, and indeed does protect, only the graphic design and not the colors in which it is eventually produced.

The importance of looking beyond mere color similarities and focusing on the graphic design itself was emphasized in Clarion Textile Corp. v. Slifka, 223 F.Supp. 950 (S.D.N.Y.1961). In that case, as here, there was no doubt that the plaintiff's design was the inspiration of defendant's and the coloring scheme created an immediate impression of similarity. As the court stated:

"The designs are enough alike so that a woman wearing plaintiff's [design]

in brown and green would exclaim 'There goes my dress' if she saw a woman wearing [defendant's design] in the same color scheme. My belief is, however, that there would be no such exclamation if [defendant's] were light green and cerise."

Id. at 950. Disregarding the color similarities, the Clarion court found the graphic designs themselves to be sufficiently different and denied plaintiff's motion for a preliminary injunction.

In order to compare and contrast the designs themselves and to minimize the effect of the colors, I requested black and white photographic reproductions of the two designs to be submitted. These photographs were made by both parties and received into evidence.

When these black and white reproductions were viewed, the effect was similar to that in First American Artificial Flowers, Inc. v. Joseph Markovits Inc., 342 F.Supp. 178 (S.D.N.Y.1972) where the court explained:

"Turning to the actual comparison of the copyrighted and accused works, the first, generalized impression is one of similarity. This is understandable, in light of the . . . [similar and vivid colors] . . . . However, a closer inspection, more attentive to detail but still no more than could reasonably be expected of a lay observer, reveals a pattern of differences, not of near, or absolute, identity of parts."

Id. at 186.

■ A closer inspection of the black and white reproductions in this case, an inspection like that in First American, supra, which is more attentive to detail and yet no more than could be expected of an average observer, leads me to conclude that the graphic patterns themselves are, in fact, different. Therefore, plaintiff's copyright has not been infringed.

Having found the defendant's design to be non-infringing, it is not necessary to rule on defendant's argument that the

**1202**

plaintiff's copyright itself is invalid for lack of originality.

For the above reasons, plaintiff has failed to meet its burden of proof on either the motion for a preliminary injunction or the trial on the merits of the permanent injunction. Therefore, neither a preliminary injunction nor a permanent injunction will issue.

So ordered.